**Herbert STEINER, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

**No. 86–2046.**

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 21, 1987.

Decided Oct. 13, 1987.

Kenneth F. Laritz, Warren, Mich., for plaintiff-appellant.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., Jerald S. Post, Dept. of H. & H.S. Office of Gen. Counsel, Region V, Chicago, Ill., for defendant-appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and BROWN, Senior Circuit Judge.

PER CURIAM.

Herbert Steiner ("claimant") appeals the judgment of the District Court rejecting the Magistrate's Report and Recommendation and upholding the Secretary's determination that claimant has skills transferable to numerous sedentary jobs. We affirm.

Claimant sought disability benefits pursuant to section 223 of the Social Security Act, 42 U.S.C. § 423. The Secretary denied his application initially and upon reconsideration. The Administrative Law Judge ("ALJ") determined that the claimant was unable to perform his past relevant work as a corrections officer, a general maintenance mechanic, or a storekeeper. Nevertheless, the ALJ determined that claimant has the residual functional capacity for sedentary work. Joint Appendix at 12. The Appeals Council affirmed the ALJ's denial of benefits. The Magistrate's Report and Recommendation recommended a judgment for the claimant, finding that the ALJ erred in determining that the claimant had skills, as opposed to aptitudes, that are readily transferable to sedentary jobs. The District Court rejected the Magistrate's Report and Recommendation, finding that claimant had acquired specific skills necessary to perform significant numbers of sedentary jobs.

Claimant contends that the Secretary's finding that he has the residual functional capacity to perform sedentary work is not supported by substantial evidence, and that the District Court erred in finding that he had transferable skills.

Claimant was fifty-six years old at the time of the hearing before the ALJ. He testified that he had two years of college education, during which he studied the field of corrections and police administration. He had been an infantry platoon sergeant in the Army for twenty-two years. After that he worked as a correctional officer for eight years, as a storekeeper for two years, and as a mechanic for three years. Joint Appendix at 28–30. He testified that he was a "self-taught" mechanic, and that he worked in the areas of welding, fabrication, and vehicle repair. Joint Appendix at 32.

Claimant testified that he has constant pain in his lower back, which started shortly before his last day of work in December, 1983. He has not worked since then. He takes Tylenol every four hours for the pain. He also testified that he gets periodic attacks of gout, based on foods and stress, which particularly affect his feet. The periods between attacks of gout, he stated, range from between one month to a day. He takes several medications when he suffers an attack, one of which causes severe diarrhea, another of which causes him to have problems holding and gripping objects. He further testified that he suffers from arteriosclerosis of the right ventricle. He sometimes has chest pains at night, and finds himself short of breath when he exerts himself, for which he takes

an inhaler. He had back surgery in 1983 and stomach surgery in the early 1970's. He testified that he alternates between sitting, standing, and walking as he gets uncomfortable, and that if he sits, stands, or walks too long his knees lock up and he gets additional pain in the small of his back. He lies down two or three times a day because of pain. Joint Appendix at 38–52.

## I.

■ The first issue is whether the ALJ erred in finding that claimant is capable of sedentary work. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

Pursuant to 20 C.F.R. § 404.1520 the ALJ followed a five step process in determining whether or not the claimant was disabled.[1] The ALJ determined at the fifth step that, although claimant was not capable of performing his past relevant work as a corrections officer, a general maintenance mechanic, or a storekeeper, he has the residual functional capacity to perform sedentary work.[2] Joint Appendix at 12.

The claimant argues that the medical evidence supports his claim that the pain he suffers prevents him from performing any kind of work. The ALJ found that the medical evidence established that the claimant has gouty arthritis, post laminectomy

pain with intermittent muscle spasms, mild osteoarthritis of the knees, and moderate pain. Joint Appendix at 12. He further found that the claimant has the residual functional capacity to perform the physical exertion requirements of work except for prolonged walking, standing, climbing or sitting without a change of positions, and frequent bending, twisting or stooping, and that the claimant has the residual functional capacity to perform sedentary work, which is defined as work that involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

We find that the ALJ's findings are supported by substantial evidence. The medical history shows that the claimant was admitted to Redford Community Hospital in December, 1983 complaining of pain in his leg (although he did not complain of pain in his back). He was diagnosed as having acute radiculitis. Joint Appendix at 98. In January of 1984 a myelogram showed a herniated disc at the L4–L5 level laterally on the left side. Joint Appendix at 113. In April of 1984, laminectomies were performed to repair the herniated disc and subsequent leakage. At the time of the operations Dr. Friedman, the attending

---

**1.** The five step process is as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings. 20 C.F.R. § 404.1520(b).

2. An individual who does not have a "severe impairment" will not be found to be "disabled." 20 C.F.R. § 404.1520(c).

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. 20 C.F.R. § 404.1520(d).

4. If an individual is capable of performing work he has done in the past, a finding of "not disabled" must be made. 20 C.F.R. § 1520(e).

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed. 20 C.F.R. § 404.1520(f).

**2.** Neither the Magistrate nor the District Court addressed this issue.

physician, reported that the claimant denied any chest pain or shortness of breath, and found his chest clear to percussion and his heart normal, with no significant murmurs. Joint Appendix at 126. Following the operations, Dr. Friedman, stated that the claimant was "much improved from his previous pain." Joint Appendix at 125.

The subsequent medical history indicates that the laminectomies performed in April of 1984 relieved the claimant's radiculopathy, and that he has not suffered from serious back pain since. Joint Appendix at 125, 136, 168, 170–71. The claimant's main problem appears to be gout. However, the claimant testified that the symptoms subside within twelve hours if he uses medication. Joint Appendix at 37. Furthermore, a number of the medical reports indicate that the claimant was not suffering pain at the times he was examined. Joint Appendix at 125–26, 136, 171. A residual functional capacity assessment dated January 24, 1985 indicated that the claimant retains the maximum capacity to lift/carry fifty pounds, that he could frequently lift/carry twenty-five pounds, that he could stand or walk a total of six hours per day, and that he could sit a total of six hours per day. Joint Appendix at 163.

The claimant's remaining complaints, chest pains, shortness of breath upon exertion, arteriosclerosis of the right ventricle, and side effects from medication are insufficient to mandate a finding that the ALJ erred. The claimant denied having chest pains when Dr. Friedman examined him at the time of the laminectomies. Joint Appendix at 126. He testified that the chest pains that he gets occur mostly at night; nightly chest pains would not appear to prevent him from performing sedentary work. Furthermore, the record contains little, if any, objective evidence of a condition which would cause these pains. Although Dr. Patel reported that the claimant suffers from emphysema, he does not support this finding with X-rays or lab reports.

Also, the claimant maintains a one pack a day cigarette habit in spite of his chest pains. Joint Appendix at 126. When the claimant complained of shortness of breath, he said that it occurred only after climbing one or two flights of stairs or walking one and a half miles. Such a condition would not appear to prevent him from performing sedentary work, particularly given that he has never stated that the shortness of breath causes him pain. There is no evidence that the claimant's arteriosclerosis of the right ventricle of his heart would prevent claimant from performing sedentary work, especially as he never complained about a heart problem prior to its discovery. The claimant complained of side effects from his medication for the first time at the hearing, none of the medical reports indicate that he complained to a doctor about the side effects.[3]

## II.

The second issue is whether the District Court erred in rejecting the Magistrate's Report and Recommendation by finding that the claimant has skills which are transferable to sedentary jobs. The claimant was a correctional officer for eight years, a storekeeper for two years, and a general maintenance mechanic for three years. A rehabilitation counselor testified at the hearing before the ALJ that these fell into three job classifications: 1) correctional officer, a skilled, medium exertional level job; 2) inventory control specialist/supply clerk, a semi-skilled, medium exertional level job; and 3) general maintenance mechanic, a skilled, medium exertional level job. Joint Appendix at 55. He further testified that from these positions claimant had acquired the skills of knowledge of working with people, both in a supervisory category and a therapeutic category, knowledge of law enforcement, knowledge of rules and regulations in regard to detention, clerical skills, report preparation skills, and mechanical skills.

**3.** Claimant contends that the ALJ failed to evaluate his complaints of pain pursuant to the interim standard contained in the Disability Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A). Although the ALJ did not specifically mention the standard, the findings of fact are sufficient to permit this Court to decide the issue of substantial evidence. *See Duncan v. Secretary of Health & Human Servs.,* 801 F.2d 847, 851 (6th Cir. 1986).

The non-mechanical skills, he stated, are transferable to the sedentary level positions of quality control inspector, order clerk in the wholesale and manufacturing industries, and dispatcher in law enforcement. Altogether, he testified, there are about 4300 such jobs in the Detroit metropolitan area. Joint Appendix at 56–57. He stated that there would be minimal vocational adjustment in transferring the skills.

The ALJ found that, based on the rehabilitation counselor's testimony, the claimant had acquired work skills, including knowledge of quality control and inventory management, clerical skills, knowledge of tools and machinery, and knowledge of law enforcement. He further found that these skills could be transferred to meet the requirements of semi-skilled work which exists in significant numbers in the national economy, including the jobs of quality control inspector, order clerk, and law enforcement dispatcher, all of which are at the sedentary level.

The magistrate found that the ALJ had erred in determining that the claimant possessed skills, as opposed to aptitudes. He stated that the skills the rehabilitation counselor referred to are merely a basic mechanical ability and the ability to read and write, which, the magistrate stated, are common to most people and cannot be considered skills. Magistrate's Report and Recommendation at 6. However, the rehabilitation counselor determined that the claimant's mechanical abilities are transferable to a job that is at the light exertional level, not the sedentary level. Thus the magistrate's determination that the mechanical abilities are aptitudes, not skills, is not relevant to the question of whether the claimant has skills transferable to jobs at the sedentary level. The magistrate also found that the skills acquired by the claimant as a corrections officer are not transferable to dispatching work. The District Court rejected the Magistrate's Report, finding that the claimant had acquired specific skills necessary to perform significant numbers of semi-skilled jobs. Order Rejecting Magistrate's Report and Recommendation at 2.

The claimant argues that the skills that the rehabilitation counselor attributed to him are in fact only his basic mechanical ability and the ability to read and communicate. In *Weaver v. Secretary of Health & Human Services*, 722 F.2d 310 (6th Cir. 1983) this Court held that aptitudes, such as intelligence, form relations, and manual dexterity, are innate abilities, and not skills, which the Court defined as learned abilities.

The rehabilitation counselor found that the claimant had acquired the ability to work with people, in both supervisory and therapeutic capacities. This ability may be innate, learned, or both. The counselor also found that the claimant had acquired knowledge of law enforcement and of detention rules and regulations. These are clearly learned, not innate, abilities and therefore are skills. He also found that the claimant had acquired clerical skills and report preparation skills. These too are learned abilities, and therefore skills. The fact that these skills may involve the ability to read and write, and that the ability to read and write is common to most people, does not render them innate as opposed to acquired. Consequently, we find that the District Court properly rejected the Magistrate's Report and Recommendation.

Accordingly, we AFFIRM the judgment of the District Court.