**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0054n.06
Filed: October 28, 2004

No. 03-6233

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

HOLLY O. ESSARY, )
)
**Plaintiff-Appellant,** )       **ON APPEAL** FROM THE
)       UNITED STATES DISTRICT
v. )       COURT FOR THE WESTERN
)       DISTRICT OF TENNESSEE
COMMISSIONER OF SOCIAL )
SECURITY, )
)       **O P I N I O N**
**Defendant-Appellee.** )
)

**Before: MOORE and SUTTON, Circuit Judges, and ADAMS,** * **District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Holly O. Essary

("Essary") appeals Defendant-Appellee Social Security Commissioner's ("Commissioner") denial

of Essary's application for Social Security disability insurance and supplemental security income

benefits. Essary alleges that the Administrative Law Judge ("ALJ") erred in finding Essary

ineligible for benefits on the basis that her condition did not constitute a disability. For the reasons

set forth below, we **AFFIRM**.

---

*The Honorable John R. Adams, United States District Court for the Northern District of
Ohio, sitting by designation.

# I. BACKGROUND

In August 2000, Essary filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits based on disability pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Essary alleged that, as of her onset date of June 2000, she suffered from several impairments, including degenerative disc disease of the lumbar spine, hypertension, obesity, and major depressive disorder. The Social Security Administration initially denied Essary's application on September 5, 2000, and, upon reconsideration, again denied benefits on October 12, 2000. Essary then appeared before an ALJ during a hearing held on October 19, 2001. On February 28, 2002, the ALJ denied Essary's application for benefits, concluding that she did not have a "disability" as defined by the Social Security Act.

On March 19, 2002, Essary filed a request for review of the ALJ's decision with the Appeals Council, which initially denied relief. The Appeals Council then vacated its prior decision on October 30, 2002, so as to consider new evidence submitted by Essary. After reviewing the additional evidence, the Appeals Council again upheld the ALJ's decision. On December 6, 2002, Essary filed suit against the Commissioner in the United States District Court for the Western District of Tennessee challenging her denial of benefits. On August 22, 2003, the district court affirmed the ALJ's decision, and Essary timely filed her Notice of Appeal to this court.

# II. ANALYSIS

Title 42 U.S.C. § 405(g) authorizes judicial review of a Commissioner's decision to deny an application for benefits, and we have jurisdiction to hear appeals of the district courts' final orders in such cases. *See* 28 U.S.C. § 1291; 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

525, 528 (6th Cir. 1997). We review ALJ findings to determine if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is for the Secretary to resolve conflicts in the evidence and to decide questions of credibility. The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.") (internal quotation marks and citations omitted).

The Commissioner applies a five-step analysis to determine whether a person qualifies as disabled:

1. If claimant is doing substantial gainful activity, he is not disabled.
2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citations omitted). In rejecting Essary's application for benefits, the ALJ found that, although Essary's claimed impairments (degenerative disc disease of the lumbar spine, obesity, hypertension, and major depressive disorder) "are considered 'severe' impairments within the meaning of the [Social Security] Act," Essary was not presumptively disabled based on these impairments because they "do not, singly or in combination, meet or equal the level of severity" required to qualify as a "listed impairment." ALJ Decision at 5. As a result, Essary would have to

3

demonstrate that her impairments prevented her from doing her past relevant work, and if the Commissioner could show that jobs existed in the national economy that Essary could perform notwithstanding her impairments, Essary would not be found disabled.

## A.  Severity of Impairments

On appeal, Essary raises several arguments attacking the ALJ's assessment of the severity of her impairments.  First, Essary challenges the ALJ's finding that her "subjective allegations regarding the extent of her limitations were not entirely credible . . . ."  ALJ Decision at 5.  We typically afford "great weight and deference" to the Commissioner's credibility findings because the "ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531; *see Felisky*, 35 F.3d at 1036 (noting that credibility determinations are the province of the Commissioner, not the reviewing court).  When a claimant's testimony conflicts with medical records and other evidence, an ALJ appropriately may discount the claimant's testimony. *Walters*, 127 F.3d at 531.

We conclude that the ALJ's assessment of Essary's credibility finds substantial support in the record and thus warrants our deference.  This substantial support comes in the form of record evidence that Essary was hypersensitive to pain, that her allegations of pain were inconsistent with her ability to engage in various physical activities, and that her doctors could not determine the source of her pain despite the use of multiple diagnostic tools.  Essary argues on appeal that x-rays taken in April 1997 support her October 2001 statement that her bones rub together, which the ALJ used as an example of how Essary's subjective complaints were at odds with the medical evidence.  However, the existence of the April 1997 x-rays does not undermine the ALJ's credibility finding because the x-rays predated Essary's successful discectomy in January 1999.  Because substantial

4

evidence in the record supports the ALJ's conclusion that Essary's testimony was not entirely credible, we defer to the ALJ on this score.

Essary also asserts that the ALJ failed to take into consideration the adverse side effects caused by her medications in evaluating the severity of her pain. First, Essary contends that the ALJ did not consider the fact that in May 2000, she suffered from a severe adverse reaction as a result of taking Haldol. However, this incident occurred prior to the alleged onset date of Essary's disability, and Essary immediately stopped taking Haldol, so she did not suffer from any adverse side effects attributable to Haldol during the time she alleges she was disabled. Essary's assertion that the ALJ failed to take stock of her OxyContin-induced drowsiness or the side effects of her other medications similarly lacks merit. Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians. Thus, based on the record before him, the ALJ did not err in finding that Essary suffered no adverse side effects from her medications. *See Steiner v. Sec'y of Health and Human Servs.*, 859 F.2d 1228, 1231 (6th Cir. 1987).

Third, Essary asserts that the ALJ failed to consider her efforts to obtain pain relief as bolstering the credibility of her allegations. In fact, the ALJ did consider Essary's history of seeking treatment for her pain, discussing Essary's treatment in July and August 2000 by pain specialist Dr. Frank Jordan and her participation in physical therapy from August 2000 through October 2000, and subsequent treatment by Dr. Jordan and Dr. John Rowland beginning in May 2001. Moreover, the fact that Essary sought treatment for her pain does not by itself dictate a finding that Essary's allegations of pain were credible, particularly in light of the substantial evidence in the record calling into question whether Essary's pain was as severe as alleged.

Fourth, Essary claims that the ALJ misconstrued her daily activities when assessing the severity of her pain. In evaluating Essary's subjective symptoms, the ALJ considered Essary's daily activities and found that, among other things, she could drive, perform light household chores, prepare meals, attend church, and engage in hobbies such as cross-stitching and completing crossword puzzles. According to Essary, she cannot perform many of these activities alone, for a sustained period of time, or if she has taken certain medications. Substantial evidence, however, supports the ALJ's assessment of Essary's daily activities, as both Essary's August 2000 application for benefits and Dr. Richard Spring's December 2001 report noted a similar range of daily activities. To the extent that Essary's testimony indicates a decline in her daily activities over time, the ALJ could appropriately discount such testimony in light of his finding that Essary was less than credible. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 242 (6th Cir. 2002).

## B. Residual Functional Capacity

After concluding that a claimant's impairments do not rise to the level of severity necessary for a presumption of disability, the Commissioner must determine the extent to which pain and other symptoms affect the claimant's capacity to perform basic work activities. In evaluating whether Essary could return to her past relevant work, the ALJ assessed Essary's residual functional capacity and concluded that Essary could "perform a significant range of light work." ALJ Decision at 9; *see* 20 C.F.R. § 404.1567(b) (defining "light work" in part as lifting ten pounds frequently but no more than twenty pounds and "a good deal of walking or standing"). On appeal, Essary asserts that the ALJ committed multiple errors in reaching such a conclusion.

Essary first challenges the ALJ's decision to give "less weight" to the assessment of Dr. Twilla, one of Essary's treating physicians, "because it is inconsistent with the longitudinal record

6

and his own objective medical findings, and because the final responsibility for deciding disability issues is reserved for the Commissioner." ALJ Decision at 5. In an October 2001 report, Dr. Twilla concluded that, *inter alia*, Essary could occasionally lift a maximum of ten pounds and frequently lift a maximum of five pounds, could stand for less than an hour a day, and could not sit or stand for longer than fifteen minutes at any one time. Such findings would place Essary in the sedentary, not the light work, category. *See* 20 C.F.R. § 404.1567(a).

Generally speaking, the opinions of treating physicians are afforded considerable, if not controlling, weight. *See* 20 C.F.R. § 404.1527(d)(2). If an ALJ discounts the opinion of a treating physician, he or she must provide "good reasons" for doing so. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004). Here, the ALJ correctly noted that Dr. Twilla's medical opinion was not entitled to particular weight to the extent Dr. Twilla's opinion took the form of a conclusory statement about an issue for resolution by the Commissioner. *See* 20 C.F.R. § 404.1527(e). Also, as the ALJ observed, the treatment records of Dr. Twilla before the ALJ do not support a finding of limitations on Essary's physical activities as severe as Dr. Twilla's October 2001 assessment would suggest. Although Dr. Twilla's treatment notes indicate that Essary complained of back pain, these records provide no indication that Essary's pain was so severe that she could not sit or stand for longer than fifteen minutes. Moreover, the medical records prepared by Dr. Twilla do not state that he placed any restrictions on Essary's activities in light of her physical ailments. Even if Dr. Twilla would not have needed to place such restrictions on Essary because of the obviousness of her physical limitations, Dr. Twilla's failure to catalog such restrictions in his treatment notes so as to maintain an accurate medical history calls into question whether Essary was in fact so restricted.

7

Essary also alleges that the ALJ erred by giving controlling weight to the residual functional capacity assessments of state medical and psychological consultants who did not routinely examine or treat her. This argument lacks merit because the ALJ did not give such testimony controlling weight, but rather limited his reliance on these opinions because of the possibility that the consultants did not have the entire record before them for review. Ultimately, the ALJ concluded that Essary's residual functional capacity was less than that indicated by the state agency consultants, thus demonstrating that the opinions of the state consultants were not afforded controlling weight.

Essary next challenges the ALJ's assessment of her ability to work on the basis that the ALJ failed to consider the impact of her obesity. However, the ALJ did take Essary's obesity into account, stating in his decision that "degenerative disc disease of the lumbar spine, obesity, hypertension, and major depressive disorder, can reasonably be expected to result in some degree of functional physical and mental limitations. . . ." ALJ Decision at 5. The absence of further elaboration on the issue of obesity likely stems from the fact that Essary failed to present evidence of any functional limitations resulting specifically from her obesity. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (rejecting claimant's "argument that the ALJ erred in failing to consider his obesity in assessing his RFC," explaining that, "Although his treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions.").

Finally, contrary to Essary's assertion, the record does include sufficient evidence to sustain the ALJ's residual functional capacity finding. Although the ALJ discounted their opinions

somewhat because their review was confined to Essary's medical records, the state consultants determined that Essary's residual functional capacity not only met, but actually exceeded, the light-work classification. Also, Dr. Richard Spring examined Essary in December 2001 and observed that she could drive, use public transportation, follow instructions, and work within a regular schedule. Essary's own application for benefits stated that she could perform daily life activities such as cooking dinner each night, regularly driving to visit friends and family, and cross-stitching. Thus, substantial evidence supports the ALJ's finding that Essary had a residual functional capacity to perform light work notwithstanding her impairments.

## III. CONCLUSION

For the reasons set forth above, we conclude that the ALJ's denial of benefits was proper and therefore **AFFIRM** the decision of the district court.