**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0595n.06

Case No. 13-6654

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 05, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TAMMY MOORE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER, Chief Judge; SILER and DONALD, Circuit Judges.

**SILER**, Circuit Judge. Tammy Moore appeals the district court's judgment affirming the Commissioner's denial of disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the following reasons, we **AFFIRM**.

**PROCEDURAL AND FACTUAL BACKGROUND**

In her applications for DIB and SSI, Moore alleged disability due to chronic obstructive pulmonary disease ("COPD"), asthma, arthritis, problems with her knees, problems with her back, and obesity. She further alleged the onset date of her disability as November 27, 2007, coinciding with the date she stopped working as a product packager "because of [her] condition(s)." She later amended her onset date to September 1, 2009.

After the Administrative Law Judge ("ALJ") issued its decision in 2011 denying relief, Moore submitted additional evidence from her treating physician, Dr. Joel Knight, which

consisted of a functional capacity questionnaire and a short statement about the amount of time needed for Moore to administer a nebulizer treatment. In denying Moore's request for review, the Appeals Council stated it had considered the additional evidence but concluded it did "not provide a basis for changing the [ALJ's] decision." The district court affirmed the denial of Moore's applications.

## STANDARD OF REVIEW

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).

## DISCUSSION

Moore argues that the ALJ (1) erred in its adverse credibility determination as to Moore's allegations of disabling symptoms and (2) did not correctly consider the medical opinion evidence, in (a) not affording controlling or substantial weight to her treating physicians' opinions and (b) giving such weight to the opinions of nonexamining state agency physicians.

### 1. Moore's Credibility

The ALJ determined that Moore's testimony regarding her symptoms was not fully credible because it did not align with the clinical findings and medical evidence. Credibility determinations regarding the applicant's subjective complaints rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). In assessing an individual's credibility, the ALJ must first determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234,

247 (6th Cir. 2007). The ALJ found that Moore had such an impairment. Next, the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as other factors found in 20 C.F.R. §§ 404.1529(c)(1)-(3) and 416.929(c)(1)-(3). *See, e.g.*, *Rogers*, 486 F.3d at 247.

The ALJ's credibility determination was supported by substantial evidence. The ALJ found numerous inconsistencies that called into question the reliability of Moore's testimony and of other information she provided. First, the ALJ noted that, despite the severity of Moore's alleged symptoms, her condition did not require frequent emergency room visits for asthma attacks or other acute respiratory problems. Indeed, after her alleged onset date, Moore went to the emergency room for respiratory issues just once, in October 2010. The clinical notes from the period following Moore's onset date reinforce this doubt, whereupon multiple examinations indicated clear lungs as well as normal respiratory effort and breath sounds.

The ALJ also noted that Moore made numerous trips to the emergency room for reasons other than her respiratory issues. The ALJ reasonably concluded that Moore's testimony that she could not afford emergency treatment when she had an asthma attack was not credible in light of her ability to pursue treatment for conditions unrelated to her allegedly disabling impairments. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). As recognized by the ALJ, Moore's testimony was further undermined by her continued purchase of cigarettes, which reached as high as three packs a day. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (noting claimant's testimony that he could not afford support hose prescribed by his physician was contradicted by his admission that he smoked two packs of cigarettes a day). Moreover, Moore testified at the administrative hearing that she had obtained medical insurance "just recently," but emergency room records show she had coverage as early as July 2007, long before the alleged

onset date. Therefore, the record shows that Moore had resources available to pursue treatment. Her failure to pursue that treatment greatly erodes her credibility. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (concluding that the claimant's failure to seek treatment undercut his complaints of disabling symptoms).

The ALJ also considered Moore's admission that her medications controlled her symptoms. Moore attempted to discount this admission by alleging side effects of medication, specifically a "jittery and shaky, real nervous feeling." The ALJ determined, however, that the record did not corroborate her allegations. Moore never reported to Dr. Knight, or any other medical provider, that she experienced negative side effects from her medications. Additionally, Dr. Knight's notes did not reflect that Moore was jittery or nervous. *See Steiner v. Sec'y of Health & Human Servs.*, 859 F.2d 1228, 1231 (6th Cir. 1987) (noting that, although the claimant complained of side effects at the hearing, "none of the medical reports indicate that he complained to a doctor about the side effects").

The ALJ also properly took into account Moore's daily activities, which included caring for two school-aged children and performing household chores. Additionally, she walked a total of almost two miles every day, taking her daughter to and from school. In sum, the ALJ identified several instances where Moore's complaints of disabling symptoms were at odds with the medical opinion evidence and other evidence in the record. "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency . . . should have the opposite effect." *Rogers*, 486 F.3d at 248. Therefore, the ALJ's adverse credibility determination is supported by substantial evidence.

**2. Medical Opinion Evidence**

Moore argues that "the ALJ failed to properly weigh the medical opinions of [her] treating physicians and psychiatrists" by "refusing to give [those opinions] . . . controlling weight," but does not elaborate or provide any further development of the argument. Therefore, we deem this issue waived. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997))).

Regardless, Moore's argument fails on the merits. Under the treating-physician rule, "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source'), and an opinion from a medical source who regularly treats the claimant (a 'treating source') is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a 'nontreating source')." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1) and (c)(2)). In other words, the medical opinions of treating physicians generally are accorded greater weight than those of other physicians. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). However, 20 C.F.R. § 404.1527(a)(2) defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a patient's] impairment(s), including [ ] symptoms, diagnosis and prognosis, what [a patient] can still do despite impairment(s), and [ ] physical or mental restrictions." As

such, the August 2011 statement of Moore's treating physician, Dr. Knight, indicating that Moore "uses her nebulizer eight times [a] day," does not constitute a medical opinion.

Even if it could be considered a medical opinion, there were good reasons for discounting it: Dr. Knight's very own treatment notes fail to corroborate his statement. They specifically call for DuoNeb and Albuterol to be taken four times a day *as needed only*. Although the ALJ must "give good reasons" for discounting the weight given a treating source's opinion, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), the ALJ "is not bound by the treating physician's opinions," and such opinions will "receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). Therefore, the ALJ did not err in according little weight to Dr. Knight's statement as to the frequency of Moore's nebulizer treatments.

To the extent Moore attempts to request review of evidence submitted by her treating physician after the ALJ issued its decision—namely, Dr. Knight's responses to a functional capacity questionnaire and a signed statement as to the amount of time Moore spent setting up a nebulizer and administering a treatment—that evidence is not part of the administrative record and is not subject to our review. *See, e.g.*, *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) ("[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision.").

Moore separately contends that "the ALJ improperly appears to give controlling weight to medical opinions rendered by nonexamining state agency physicians who never examined [her] and who failed to review all the relevant medical evidence." The state agency physicians

she refers to are Dr. Perritt and Dr. Brown. However, Moore does not cite to any portion of the ALJ's opinion where the ALJ discussed either Dr. Perritt's psychiatric review of Moore or Dr. Brown's physical RFC assessment of her, both completed in 2010. Again, this argument lacks detail or development and is thus deemed waived. *See Stewart*, 628 F.3d at 256.

Moore appears to be arguing that because the ALJ found that she could perform light work, as did the state agency physicians, we should assume that the ALJ gave controlling weight to those opinions. The ALJ went through a detailed review of Moore's past medical tests, her daily activities, and the evidence offered by physicians in making the determination that she could perform light and sedentary work with environmental limitations. There is no evidence that the ALJ relied on the opinions of Dr. Perritt and Dr. Brown, let alone that it gave them controlling weight.

**AFFIRMED**.