Janell L. SMITH, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Health and Human Services, Defendant.

Case No. 1:08–cv–319.

United States District Court, W.D. Michigan, Southern Division.

July 7, 2009.

Charles A. Robison, Robison Law Office, P.C., Albion, MI, for Plaintiff.

Matthew L. Meyer, U.S. Attorney, Grand Rapids, MI, for Defendant.

**OPINION and ORDER**

PAUL L. MALONEY, Chief Judge.

**Overruling the Petitioner's Objections and Adopting the R & R; Affirming the Commissioner's Denial of Disability Benefits; Terminating and Closing the Case**

■ Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R & R") on April 15, 2009. Plaintiff Janell L. Smith ("Smith") filed timely objections on May 2, 2009 and the defendant Commissioner filed a timely response on May 15, 2009. The court finds that Smith's first objection is sufficiently specific and articulated to trigger *de novo* review of the R & R's treatment of the obesity issue, but it lacks merit[1]. Smith's second objection, however, is an unsupported conclusory objection.

**The court finds the R & R to be well-reasoned and is unconvinced by the plaintiff's objection.** For the reasons explained by the R & R, substantial evidence supported the ALJ's determination that Smith's impairments did not render her disabled during the insured period.

■ Smith's first objection is entitled "The ALJ did not give sufficient weight to the effects of Plaintiff's morbid obesity on her ability to perform substantial gainful activity."[2] P's Objec-

---

1. " 'Only those objections that are specific are entitled to a *de novo* review under the statute.' " *Westbrook v. O'Brien,* 2007 WL 3462337, *1 (W.D.Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall,* 806 F.2d 636, 637 (6th Cir.1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider")).

See, *e.g., Fairfield v. Wacha,* 2008 WL 584940, *2 (W.D.Mich. Feb. 28, 2008) (Maloney, J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory

or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams,* 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) And *Bates v. Chapleau,* 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.)).

2. Prior to 1999, the SSA's Listing of Impairments included obesity, meaning that at step three of the five-step analysis, there was "a generous presumption" that obese claimants were disabled. *Combs v. SSA,* 459 F.3d 640,

tions at 2. Smith begins her first objection by stating her ultimate contention and making a specious attack on the Magistrate Judge's entirely appropriate reference to an unpublished opinion:

> The Magistrate Judge excuses the ALJ's failure to follow the directions contained in SSR 02–01p because plaintiff failed to show that her level III obesity ("morbid obesity") caused any effect upon her ability to perform full time, regular competitive employment, citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411–12 (6th Cir. Jan. 31, 2006)[.] The case does not support the conclusion reached by the Magistrate Judge.
>
> First, the Magistrate Judge cited an unpublished opinion of the 6th Circuit court which is non precedential.

*Id.* It is true that unpublished decisions of the Sixth Circuit do not bind anyone except the parties to those particular cases,

*US v. Flores,* 477 F.3d 431, 433–34 (6th Cir.2007) (Griffin, J.), and the same is true of district-court decisions, whether published in the Federal Supplement books or not, *id.* at 438. But Smith cites no authority for the odd proposition that courts may not, or should not, consult non-binding decisions—which constitute a majority of opinions issued by the Sixth Circuit and *all* the opinions of this court. The court finds no such authority.

On the contrary, like judges throughout the Sixth Circuit, this court regularly discusses nonprecedential decisions when they can illuminate an issue. *See, e.g., U.S. v. Keith,* 559 F.3d 499, 505 (6th Cir. 2009) ("Although unpublished decisions do not have precedential authority, they may be considered for their persuasive value in our analysis of the concept of reasonable suspicion, which does not permit of precise judicial permission and is dependent on circumstances.") (internal quotation marks and citations omitted)[3]; *Amerisure Mut.*

---

642 (6th Cir.2006) (*en banc*) (Rogers, J., joined by C.J. Boggs and JJ. Batchelder, Gibbons, Sutton, Cook, and McKeague, with J. Griffin writing separately & concurring in pertinent part). The 1999 Listing for obesity stated:

> Obesity. Weight equal to or greater than the values specified in Table I for males, Table II for females (100 percent above desired level), and one of the following:
> A. History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine; or
> B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or
> C. History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; or
> D. Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema; or
> E. Respiratory disease with total forced vital capacity equal to or less than 2.0 L. or

> a level of hypoxemia at rest equal to or less than the values specified in Table III–A or III–B or III–C.

*Combs,* 459 F.3d at 643–44 (quoting 20 C.F.R. Part 404, Subpart P, App. 1, § 9.09 (1999)). The Commissioner deleted listing 9.09 effective October 25, 1999, following notice and comment. *Combs,* 459 F.3d at 644 (citing 64 Fed.Reg. 46122, 46123 (Aug. 24, 1999)). The Commissioner explained that the criteria in listing 9.09 "were not appropriate indicators of listing-level severity because they did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." *Combs,* 459 F.3d at 644 (citing 64 Fed.Reg. at 46124). Experience convinced the SSA that the listing had "required findings of disability in some cases in which the claimants were clearly not 'disabled' as defined in the Act." *Combs,* 459 F.3d at 644 (citing 64 Fed.Reg. at 46125).

3. *See* 6TH CIR RULE 28(f), which provides, "Citation of unpublished opinions is permitted. FRAP 32.1(b) applies to all such citations." In turn, FED. R.APP. P. 32.1(b) permits citation to unpublished decisions issued after January 1, 2007, and 6TH CIR RULE 28(g)

*Ins. Co. v. Carey Transport., Inc.,* 578 F.Supp.2d 888, 905 (W.D.Mich.2008) (Maloney, C.J.) ("While not bound to follow this unpublished decision, the court finds it persuasive.") (adopting logical interpretation of Michigan insurance law found in unpublished MI Court of Appeals decision); *Monehen v. Berghuis,* 2009 WL 702870, *19 (W.D.Mich. Mar. 16, 2009) (Neff, J.) ("Although *Renusch* [*v. Berghuis,* 75 Fed.Appx. 415 (6th Cir.2003) ] is an unpublished decision, the Sixth Circuit's analysis distinguishing the standards applied in [*People v.*] *Stanaway* [446 Mich. 643, 521 N.W.2d 557 (Mich.1994) ] and [*Pennsylvania v.*] *Ritchie* [480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ] is persuasive and applicable to petitioner's claim in this case.").

 This court's decision whether to follow persuasive authority—such as decisions by our district courts, unpublished decisions of the Sixth Circuit, or *any* decisions from outside our circuit, published or otherwise—

turns on factors such as whether the persuasive authorities employ logical reasoning;[4] whether they are internally consistent; whether they comport with established canons of construction or provide good reason for departing from such· canons; whether they are consistent with a plain and sensible reading of any applicable provisions of the Consti-

tution (taking into account the intent and understanding of the Framers), statutes (taking into account, when necessary and appropriate to clarify any ambiguity, the legislative history and intent), and regulations; and whether they comport with the letter and spirit of the binding precedents that govern the relevant area of the law.[5]

*Jones v. Bell,* 2008 WL 495317, *3 (W.D.Mich. Feb. 23, 2008) (Maloney, J.). To the extent consistent with binding precedent and valid legislative enactments, the court may also consider whether applying the persuasive authority would lead to an absurd or inequitable result, either in the particular case or as a general rule.

 Non-binding decisions can have great utility when binding decisions on the contested issue are scarce, *see, e.g., Purnell v. Arrow Fin. Servs., LLC,* 2007 WL 421828, *2 (E.D.Mich. Feb. 2, 2007) (Robert Cleland, J.) ("Because relevant binding case law is limited, the court will consider persuasive published and unpublished case law from other jurisdictions."); and where the unpublished decision addresses exactly, or almost exactly the same issue as the court confronts, *see, e.g., Dedvukaj v. Equilon Enters., LLC,* 301 F.Supp.2d 664, 669 (E.D.Mich.2004) (Steeh, J.) ("The case of [*Equilon Enterprises L.L.C. v.*] *Rahim* [*Inc.,* 80 Fed.Appx. 463 (6th Cir.2003) ],

---

extends that permission to all unpublished decisions.

4. *See, e.g., Poindexter v. McKee,* 2006 WL 322480, *3 n. 1 (W.D.Mich. Feb. 10, 2006) (Wendell Miles, J.) ("while unpublished decisions carry no precedential weight," it was logical and realistic for the panels in several unpublished Sixth Circuit decisions to conclude that "a person of ordinary firmness would not forgo his right to grieve a physical assault by a prison employee in order to remain at a given facility or work at a particular job within the facility."), *mot. to amend den.,* 2006 WL 2265279 (W.D.Mich. Aug. 7, 2006).

5. *See, e.g., Dixon v. McNutt,* 2007 WL 1657398, *2 (W.D.Mich. June 5, 2007) (Bell, C.J.) ("[T]he *Williams* [*v. Berrios,* 2007 WL 485348 (E.D.Mich. Feb. 9, 2007) ] decision is unpersuasive as it incorrectly interprets *Wilkinson* [*v. Dotson,* 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) ] [U.S. Supreme Court decision] and fails entirely to discuss *Sweeton* [*v. Brown,* 27 F.3d 1162 (6th Cir.1994) ] [a published 6th Circuit decision].").

although unpublished, is especially persuasive in light of this case's identical PMPA issue."), *aff'd*, 132 Fed.Appx. 582 (6th Cir. 2005).

■ And even where binding decisions clearly set forth the applicable legal standard, a non-binding decision may provide a factual scenario more similar to the facts of the case at bar than any binding decisions. *See, e.g. Korn v. Paul Revere Life Ins. Co.*, 2005 WL 2932073, *5 (E.D.Mich. Nov. 4, 2005) (Cleland, J.) ("This Court plainly determined that the reasoning of [Michigan Court of Appeals decision], though unpublished, was persuasive. *Its predicates were, in fact, so close to the instant case as to convince this court that an identical analysis should be applied* and that such analysis was determinative.") (emphasis added); *Mack v. Strategic Materials, Inc.*, 270 F.Supp.2d 934, 937 (E.D.Mich.2003) ("*Brattin* [*v. Ford Motor Co.*, 1998 WL 1989519 (Mich.Ct.App. Oct. 23, 1998) ] ... (unpublished), cited by the arbitrators, is persuasive authority directly on point with the facts of this case."), *aff'd*, 106 Fed.Appx. 1000 (6th Cir.2004).

Finally, Smith does not purport to identify any legal or logical defect in the holding and reasoning of the unpublished decision the Magistrate cited, *Bledsoe v. Barnhart*, 165 Fed.Appx. 408 (6th Cir. 2006), trying instead to distinguish it factually.[6]

**Smith's first objection continues as follows:**

> * * * Second, the case [ ] is factually distinguishable from the case at hand. In *Bledsoe*, the ALJ noticed the claimant's obesity and commented upon it at page 408:
>
>> The ALJ did consider Bledsoe's obesity. First, the ALJ made explicit mention of Bledsoe's obesity in his finding of facts. Second, the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity. *See, e.g., Skarbek v. Barnhart*, 390 F.3d 500, 504, 105 Fed.Appx. 836[sic] (7th Cir. 2004) (stating "although the ALJ did not explicitly consider [claimant's] obesity, it was factored indirectly into the ALJ's decision as a part of the doctors' opinions."). Drs. Long and Hughes considered Bledsoe's obesity. JAA 270 (note, in the caption, "alleged impairment: obesity"). Thus, the ALJ's opinion shows that he considered Bledsoe's obesity.

Here the ALJ did not even mention the severe impairment in the decision. He absolutely neglected to analyze it's [sic] effects upon plaintiff's ability to perform full time, regular competitive employment. This lack of consideration flies right in the face of SSR 02–01p's directions to adjudicators. The ALJ is not free to disregard the directions from the Commissioner as to how to adjudicate cases involving obesity[,] and the Magistrate Judge errs when she attempts to uphold a faulty process. The ALJ committed a harmful legal error which should not be excused.

In *Rojas v. Astrue* [*Commissioner of Social Security* ], File No. 1:07–cv–1035 [2009 WL 465768 (W.D.Mich. Feb. 24, 2009) (Robert Jonker, J.) ] this court has already determined that morbid obesity and its effects must be given full analysis by the ALJ when considering limitations to [RFC]. This case is even worse. Here the ALJ failed to even mention the impairment, whether it be "severe" or not. SSR 96–8p requires considering

---

6. It is also curious to hear Smith intimate that it is inappropriate to cite non-precedential decisions, as she later relies on *Rojas v. SSA*, 2009 WL 465768 (W.D.Mich. Feb. 24, 2009) (Jonker, J.), which itself has no precedential force.

the impact of both severe and non-severe impairments on the ability to work:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit a[b]ility to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual for performing past relevant work or may narrow the range of other work that individual may still be able to do.

P's Objections at 2–3. First, Smith's citation of Judge Jonker's well-reasoned *Rojas* opinion is unavailing, because *Rojas* is readily distinguishable from the instant case. Smith asserts that "*Rojas* ... determined that morbid obesity and its effects must be given full analysis by the ALJ when considering limitations to [RFC]", but she overlooks the fact that the ALJ there expressly found obesity to be one of the claimant's severe impairments and then failed to discuss the effect of her obesity. In this case, by contrast, the ALJ never found obesity to be a severe impairment for Smith,[7] and her objections fail to point to specific medical opinion or other evidence, introduced before the ALJ, suggesting that her obesity on top of other impairments rendered her disabled—such that the ALJ arguably erred by not discussing the issue explicitly—let alone that such evidence and opinion was so compelling or uncontradicted that the ALJ *had to* then find her disabled on that basis.

Furthermore, in *Rojas* Judge Jonker found that the ALJ, if he did not ignore the evidence and expert opinion tending to support her claim of disability partially caused by obesity, at least accorded it legally-insufficient attention. For example, Rojas's treating physician, Troy Sasse, O.D., opined that the claimant's obesity, diabetes, and other conditions rendered her unable to perform any activities above the sedentary level, and even sedentary-level activities would leave her "severely fatigued." *Rojas*, 2009 WL 465768 at *4 and *5. Judge Jonker correctly concluded that the ALJ had committed several errors by giving short Schrift to this evidence in his opinion—errors which the ALJ in our case did not commit. For one thing, in *Rojas* "it appear[ed] that the ALJ equated Dr. Sasse's statement regarding plaintiff's ability to perform sedentary activities with the agency's definition of 'sedentary activities,' contrary to SSR 96–5p" [1996 WL 374183 (July 2, 1996), which provides, in pertinent part, that "[a]djudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms]." *Rojas*, 2009 WL 465768 at *4. "In addition," Judge Jonker explained,

> [t]he [treating] doctor's opinion appeared more restrictive than the ALJ

---

7. *See Johnson v. Astrue*, 2008 WL 746686 (E.D.Tenn. Mar. 18, 2008), where Judge Thomas Varlan explained,

> The ALJ was not required to consider whether plaintiff's obesity was a severe impairment because he determined that one of plaintiff's other impairments was severe. * * * The second step [in the five-step disability analysis] requires that the AL[J] determine whether the claimant has a severe impairment. [20 C.F.R.] § 404.1520(a)(4)(ii). "[U]pon determining that a claimant has one severe impairment, the Secretary [or the Commissioner] must continue with the remaining steps in his disability evaluation." *Maziarz v. [HHS]*, 837 F.2d 240, 244 (6th Cir.1987) ....

*Johnson*, 2008 WL 746686 at *2.

concluded .... [A]fter reviewing these records, the court concludes that the ALJ has failed to articulate good reasons for not crediting Dr. Sasse's opinions. While plaintiff submitted dozens of pages of medical records regarding her treatment by Dr. Sasse commencing in 2003, the ALJ did not address those records in any detail. The transcript contains well over 200 pages of medical records. It is difficult to reconcile the ALJ's brief summary of plaintiff's medical history and his observation that "there is a paucity of objective medical evidence of record to document the existence of any medically determinable impairment that possibly could cause the severe, totally disabling symptomatology that is alleged" ....

*Rojas,* 2009 WL 465768 at *5 (internal case citation and record citation omitted). By contrast, of all the reports and treatment notes in the record from treating, examining, and reviewing/consulting physicians in our case, Smith fails to identify any medical opinion suggesting that her obesity imposes limitations or restrictions more debilitating than those set forth in the ALJ's RFC determination. In a somewhat similar case, a Sixth Circuit panel affirmed the denial of disability benefits over the claimant's objection that the ALJ "failed to consider the impact of her obesity." *Essary v. SSA,* 114 Fed.Appx. 662, 667 (6th Cir.2004) (*Moore,* Sutton, N.D. Ohio D.J. John Adams). The panel explained that the ALJ did take Essary's obesity into account, stating in his decision that "degenerative disc disease of the lumbar spine, obesity, hypertension, and major depressive disorder, can reasonably be expected to result in some degree of functional physical and mental limitations ...." The absence of further elaboration on the issue of obesity likely stems from the fact that [claimant] failed to present evidence of any functional limitations resulting specifically from her obesity. *See Forte v. Barnhart,* 377 F.3d 892, 896 (8th Cir.2004) (rejecting claimant's "argument that the ALJ erred in failing to consider his obesity in assessing his RFC," explaining that "*Although his treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations,* and he did not testify that his obesity caused additional restrictions.").

*Essary,* 114 Fed.Appx. at 667 (emphasis added). In short, the ALJ's express reference to the claimant's obesity in *Essary* was brief and limited, and the panel deemed that aspect of the ALJ's opinion appropriate in light of his failure to identify expert medical opinion stating that his obesity imposed additional restrictions on his ability to work. Here too, Smith's failure to identify medical opinion supporting her allegation that obesity further restricts her ability to work means that she has not carried her burden of establishing disability (with obesity as part of the cause for the disability). *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are ... disabled. Therefore, you must bring to our attention everything that shows that you are ... disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are ... disabled, its effect on your ability to work on a sustained basis."); SSR 86–8 ("The individual has the burden of proving that he or she is disabled and of raising *any issue* bearing on that determination or decision.").

Our Circuit rejected almost the same argument by another claimant who

asserts that because her doctors' reports indicated her obesity, the ALJ was re-

quired to consider it as a possible impairment. The problem with this argument is [that] the ALJ never received evidence suggesting that Ms. Cranfield or her doctors regarded her weight as an impairment. In fact, Ms. Cranfield provided no evidence that her obesity affected her ability to work. Moreover, 20 C.F.R. § 404.1512(a) required Ms. Cranfield to "furnish medical and other evidence that [the SSA] can use to reach conclusions about [her] medical impairment(s) and . . . its effect on [her] ability to work on a sustained basis." *See* 20 C.F.R. § 404.1512(a). Ms. Cranfield did not satisfy this requirement with respect to an obesity claim. *Thus, the ALJ and the district court had no obligation to address Ms. Cranfield's obesity.*

*Cranfield v. SSA,* 79 Fed.Appx. 852, 857 (6th Cir.2003) (Moore, Gilman, *C.D. Ill. D.J. Richard Mills* ) (emphasis added).

■ **As for the Social Security Rulings which Smith cites, she fails to show how the ALJ's failure to expressly discuss her obesity "flies . . . in the face of SSR 02–01p's directions to adjudicators."** SSR 02–01p does acknowledge that

[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus—even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea. It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments. Obesity may also cause or contribute to mental impairments such as depression.

The effects of obesity may be subtle, such as the loss of mental clarity or slowed reactions that may result from obesity-related sleep apnea.

SSR 02–01p, 2000 WL 628049 at *3. In addition, the Ruling promises that at step three of the five-step disability analysis, the SSA will

find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of co-existing or related impairments to the extent that the combination of impairments meets the requirements of a listing. * * *

\* \* \*

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

SSR 02–01p, 2000 WL 628049 at *5. But the obesity ruling then cautions "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." SSR 02–01p, 2000 WL 628049 at *6. In other words, the Ruling does nothing to relieve Smith of the burden of marshaling competent medical opinion and evidence to show *specifically* how her obesity exacerbated her other impairments, or interacted with them, to render her incapable of all suitable work. In the context of judicial

review of the ALJ's decision, Smith had the burden of showing specifically how the obesity, in combination with other impairments, limited her ability to a degree inconsistent with the ALJ's RFC determination. Smith's objections fail to point to evidence and argument, submitted to the ALJ, by which she met that burden. And, contrary to Smith's assertions, "It is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe,* 165 Fed. Appx. at 412, followed by *Webster v. SSA,* 2008 WL 207578, *3 and *5 (W.D.Mich. Jan. 24, 2008) (Neff, J.) ("the Commissioner is not required to consider obesity in every case. * * * While SSR 02–1p contemplates the possibility that a claimant could establish obesity as medically equivalent to Listing 1.02A, ... plaintiff does not identify any medical evidence to support the claim that her obesity is medically equivalent to Listing 1.02A.").

**Smith's first objection concludes as follows:**

> The medical evidence of record ("MER") certainly shows that plaintiff suffers from some of the usual effects of morbid obesity. She has chronic pain of two weight bearing joints, her low[er] back[,] and right foot[,] which has osteoarthritis. (AR 107–122) These findings by her treating physician would impact her ability to stand the necessary 6/8 hours required by light work capacity. Her legs have also have demonstrated vari-

cose veins and chronic venous insufficiency for which she may need surgery and her doctor, Dr. Abushmaies, a vascular surgeon, has recommended [W]eight [W]atchers[8] as part of her therapy. (AR 315–334)

> These references to weight and medical conditions shows a relationship between morbid obesity and other medical conditions that also affects plaintiff's ability to function effectively in the workplace so that her morbid obesity causes some limitation of function that may, in combination with her observed severe impairments, cause disability. Plaintiff has fatigue, depression, venous insufficiency of her legs, arthritis of her ankles[,] and pain. All of these symptoms are exacerbated by Level III obesity. Pursuant to 20 C.F.R. §§ 404.1546, 416.946, at this stage, the [ALJ] is responsible for assessing [RFC]. The [ALJ] *must* determine [RFC] based on *all* the evidence and impairments contained in the record. 20 C.F.R. §§ 404.1546, 416.945.

*Id.* at 1–3 (paragraph breaks added). But it was not enough for Smith to merely introduce such evidence before the ALJ without also introducing medical opinion showing specifically how each adverse effect of obesity would eliminate some function or ability needed for gainful employment even at a "light" level. It was not enough for her to argue that the evidence shows that she "suffers from some of the usual effects of morbid obesity." Again,

---

**8.** Smith's objections do not allege that she followed the recommendation of Dr. Abushmaies that she lose weight in order to improve her health and possibly ameliorate some of her impairments, and the record does not seem to contain evidence of such compliance during the insured period. This could be another basis for holding that the ALJ committed no reversible error by not expressly discussing her obesity as contributing to disability in combination with other impairments. *Cf. Kruger v. SSA,* 2008 WL 4283549,

*3 (W.D.Mich. Sept. 12, 2008) (Wendell Miles, Senior J.) ("[A]lthough there is evidence in the record to support the ALJ's finding that plaintiff is obese ..., *there is no evidence that plaintiff ever sought treatment for her obesity* or claimed that it impacted her ability to work. Under the circumstances, *given the lack of evidence that plaintiff sought treatment for obesity, plaintiff's argument that the ALJ never considered any physician's opinion regarding plaintiff's obesity is without merit.*") (emphasis added).

Smith's objections do not identify specific medical opinion stating that her obesity impaired or limited her RFC beyond the extent of limitation and impairment recognized by the ALJ. *See Kruger v. SSA*, 2008 WL 4283549, *3 (W.D.Mich. Sept. 12, 2008) (Miles, J.) ("None of Plaintiff's care providers expressed the opinion that Plaintiff's obesity impaired or limited Plaintiff to an extent beyond that recognized by the ALJ. As the ALJ's RFC determination is supported by substantial evidence, the Court discerns no error."); *accord Burch v. Barnhart*, 400 F.3d 676, 681–84 (9th Cir. 2005). In short,

> [w]hile plaintiff is correct that the ALJ did not specifically mention her obesity in his analysis of her ability to work, the record reflects that the ALJ considered plaintiff's ability to work based upon her overall condition as a result of the combination of all of her impairments including her obesity. The ALJ stated that he reviewed the entire record. The record that was before the ALJ includes notations of plaintiff's obesity and the limitations caused by her obesity. The ALJ made findings regarding plaintiff's limitations and determined that though her impairments reduced her functional capacity, the reduction does not preclude all work activity. Because the ALJ considered the impact of plaintiff's overall condition and functionality on her ability to work, his determination is supported by substantial evidence. Accordingly, plaintiff's objection to Magistrate Judge [Carmody]'s determination that the ALJ

did not err in … failing to consider the impact of plaintiff's obesity on her ability to work will be overruled.

*Johnson v. Astrue*, 2008 WL 746686, *3 (E.D.Tenn. Mar. 18, 2008) (record citations omitted).[9]

■ Smith's second objection is entitled "**The ALJ applied wrong standards in determining plaintiff's credibility and his credibility finding is not supported by substantial evidence on the whole record.**" P's Objections at 4. In its entirety, the second objection reads as follows:

> The Magistrate Judge joined the ALJ in supplying conclusionary [sic] findings instead of facts to attempt to justify discrediting the plaintiff's testimony which disable her [sic]. Observe at step 2 of the sequential analysis that the ALJ found that plaintiff suffers from mental/emotional problems and back problems. That is tantamount to saying that her testified-to back problems and mental problems cause serious interference with her ability to p[er]form full time, regular competitive employment.
>
> If so, what facts support that conclusion? Do they also support plaintiff's version of her limited abilities to walk, stand, sit, lift and carry?
>
> The Step 2 finding is deficient in that the specific impairments are not spelled out. No review of the finding is possible when it is couched in such broad terms. What back problem is the ALJ referring to that seriously interferes with plain-

---

9. *Cf. Sattler v. SSA*, 2008 WL 2115256, *4 (E.D.Mich. May 19, 2008) (Victoria Roberts, J.) ("The ALJ also did not err in failing to consider Plaintiff's alleged obesity. Only Dr. James C. Maher … and Dr. Westervelt commented on Plaintiff's weight. Dr. Maher stated Plaintiff is obese and needs to 'work on' his weight. Dr. Westervelt noted that plaintiff is a 'somewhat heavyset man.' This minuscule amount of evidence does not prove Plaintiff's alleged obesity causes functional limita-

tions."); *Campbell v. SSA*, 2009 WL 91967, *9 (E.D.Mich. Jan. 14, 2009) (Julian Abele Cook, J.) ("Absent evidence showing that a plaintiff's weight impaired her ability to do basic work activities, the court may not question the ALJ's finding on this issue. Although in this case Plaintiff injured her leg, there is no evidence on the record to support the finding that this injury, or her obesity, significantly impacted her ability [to] undertake work-related activities.").

tiff's inability to perform work duties? Was it her lumbago or her chronic low back pain? Without specific findings the whole review of credibility is impaired. As usual, the ALJ is credited with great insight into credibility because he spent 1 hour or less in a hearing room with plaintiff. This is a fiction.

The ALJ did not seem to notice or comment on plaintiff's appearance–5 feet 5 inches tall and 280 pounds (BMI = 46.6)—or morbid, level III, obesity. At least the concept does not appear in the decision.

Plaintiff is not impaired the same every day, but she is impaired enough of the time to be unable to consistently perform full time, regular competitive employment. This case is in need of remand.

*Id.* (some ¶ breaks added). This objection lacks merit for a number of reasons. First, Smith's statement that the ALJ's finding that she suffered from mental/emotional problems and back problems "is tantamount to saying that [those] problems cause serious interference with her ability to" work full-time is simply a *non sequitur,* with no support in logic or the law. Second, Smith asks whether the finding that she suffered from such problems could "also support plaintiff's version [account]" of her limitations. But she makes no attempt to discuss *any* specific evidence and show how it actually does support her account of her limitations—let alone show that it reasonably supports *only* her account of her limitations and *not* the ALJ's determination thereof.

Third, Smith's contention that the ALJ's "failure" to sufficiently "spell out" her severe impairments at step two warrants *vacatur* and remand reflects a fundamental misunderstanding of the nature and purpose of that step in the analysis. Rejecting a related argument, our Circuit recently held, "Step two is 'a de minimis

hurdle' that the claimant clears unless the impairment is only 'a slight abnormality that minimally affects work ability.'" *McGlothin v. SSA,* 299 Fed.Appx. 516, 522 (6th Cir.2008) (Cole, *Gibbons,* E.D. Ky. D.J. Karl Forester) (quoting *Anthony v. Astrue,* 266 Fed.Appx. 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988))). Once any one impairment is found to be severe, the claimant meets her burden at step two and "the ALJ must consider both severe and nonsevere impairments in the subsequent steps". *Id.* Therefore, at step two, any failure to make a severity finding as to some impairment, or to list all impairments which the ALJ considered severe, provides no ground for disturbing the ALJ's decision.

Fourth, Smith's reiteration of the complaint about the ALJ's failure to expressly discuss obesity was addressed in detail above. Fifth, Smith's assertion that "she is impaired enough of the time to be unable to consistently" work is conclusory. Again, her objection identifies no specific medical evidence which corroborates her subjective allegations of disabling pain or limitations—let alone evidence which supports her version so strongly, in the absence of comparable evidence to the contrary, that an ALJ could not reasonably doubt her credibility.

**██ Sixth and last, Smith characterizes as a "fiction" the premise that an ALJ "is credited with great insight into credibility because he spent 1 hour or less in a hearing room with plaintiff."** P's Objections at 4. But it is not for this court to decide whether it is sensible or fair to accord such strong deference to an ALJ's assessment of a claimant's credibility. That is a matter to be taken up with the United States Congress, which alone (with the President's signature) can enact a statute altering the legal standard on

that score; with the SSA, which promulgates regulations in this area; or with the Sixth Circuit Court of Appeals sitting *en banc.* This court may not usurp the powers of a legislature or a regulator, and it is obligated to obey the holdings of our Court of Appeals' published decisions. Binding precedent holds that " '[u]pon review, the court must accord to the ALJ's determinations of credibility great weight and deference, particularly since the ALJ has the opportunity, which the court does not, of observing a witness's demeanor while testifying.' " *Luteyn v. SSA,* 528 F.Supp.2d 739, 749 (W.D.Mich.2007) (Maloney, J.) (quoting *Jones v. SSA,* 336 F.3d 469, 477 (6th Cir.2003)) (internal alterations & brackets omitted). *See also Allen v. SSA,* 561 F.3d 646, 652 (6th Cir.2009) (citing *Walters v. SSA,* 127 F.3d 525, 531 (6th Cir.1997)).

## ORDER

Accordingly, having reviewed the complaint, the parties' three briefs before the Magistrate Judge, the R & R, the plaintiff's objections to the R & R and the defendant's response thereto:

The plaintiff's objections [document # 10] are **OVERRULED.**

The R & R [document # 9] is **ADOPTED.**

The Commissioner's denial of disability benefits is **AFFIRMED.**

The complaint is **DISMISSED.**

This case is **TERMINATED** and **CLOSED.**

This is a final order.

## REPORT AND RECOMMENDATION

ELLEN S. CARMODY, United States Magistrate Judge.

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed.**

## STANDARD OF REVIEW

■■■ The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services,* 847 F.2d 301, 303 (6th Cir.1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989).

■■■ The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

■■■ Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of*

*Health and Human Services*, 964 F.2d 524, 528 (6th Cir.1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir.1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir.1984).

▮▮▮▮ As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

### *PROCEDURAL POSTURE*

Plaintiff was 33 years of age at the time of the ALJ's decision. (Tr. 21, 41). She completed the tenth grade and worked previously as a food service worker and a vending machine attendant. (Tr. 57–58, 61).

Plaintiff applied for benefits on August 13, 2003, alleging that she had been disabled since July 8, 2003, due to "mental problems." (Tr. 41–43, 56, 388–91). Plain-

tiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23–40, 393–406). On February 16, 2006, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Sandra Steele. (Tr. 410–34). In a written decision dated October 27, 2006, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 15–21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6–9). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

### *RELEVANT MEDICAL HISTORY*

#### I. MENTAL IMPAIRMENTS

On January 28, 2002, Plaintiff was examined by Dr. Cheryl Jack. (Tr. 103–05). Plaintiff reported that she was experiencing "irritability." (Tr. 103). Plaintiff reported that her "primary problem is her dissatisfaction with her marriage." (Tr. 103). Plaintiff reported that she had "outgrown" her husband and was "not quite sure how she wants to deal with the situation." (Tr. 103). The results of a mental status examination were unremarkable and the doctor observed that Plaintiff "does not appear to be depressed whatsoever." (Tr. 104–05). Plaintiff was diagnosed with a mood disorder, not otherwise specified. (Tr. 105). Her GAF score was rated as 65–70.[1] (Tr. 105). Plaintiff was prescribed Depakote to "sort of cut the edge off" her anxiety and irritability. (Tr. 105).

---

1. The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM–IV). A score of 65–70 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

On August 29, 2002, Plaintiff reported that she "left her husband and stopped [taking her] medication about 4–5 months ago." (Tr. 94). Plaintiff later returned to her husband and began experiencing stress and panic attacks. (Tr. 94). Plaintiff was diagnosed with marital problems and poorly controlled bipolar disorder. (Tr. 94).

On December 26, 2002, Plaintiff reported that she was "becoming increasingly more depressed" and wanted to "be put back on some medication that will help improve her mood." (Tr. 92). Plaintiff reported her marital problems negatively impacted her mood. (Tr. 92). The results of a mental status examination were unremarkable. (Tr. 92). Plaintiff was prescribed Prozac. (Tr. 93).

On February 6, 2003, Plaintiff reported that her mood had "improved" on Prozac. (Tr. 91). Plaintiff nonetheless felt that "more improvement" was needed, so her Prozac dosage was increased. (Tr. 91). On May 8, 2003, Plaintiff reported that her dosage increase "has been very helpful." (Tr. 89). Plaintiff denied experiencing mania, anger, or irritability. (Tr. 89). Plaintiff was "engaging" and the results of a mental status examination were unremarkable. (Tr. 89).

Treatment notes reveal that Plaintiff regularly participated in therapy from June 2003 through December 2005. (Tr. 205–302, 346–48, 356–60, 362–65, 369–75). Therapy treatment notes revealed no evidence of significant disturbance or distress and Plaintiff's GAF score was consistently reported as 60.[2] (Tr. 205–302).

On November 17, 2003, Plaintiff participated in a consultive examination conducted by Timothy Strang, Ph.D. (Tr. 124–28).

Plaintiff reported that she was presently working "at a warehouse packing food," a job which she has held for "over two years." (Tr. 124). Plaintiff asserted, however, that she was disabled "due to mental problems." (Tr. 124). Plaintiff reported that she experienced days "where [she] can't function." (Tr. 124). Plaintiff also reported experiencing low back pain. (Tr. 124). The results of a mental status examination were unremarkable. (Tr. 126–27). Plaintiff was diagnosed with bi-polar disorder and her GAF score was rated as 55.[3] (Tr. 127).

On December 4, 2003, Dr. E. Florante completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 141–54). Determining that Plaintiff suffered from bipolar disorder, Dr. Florante concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 141–50). Dr. Florante determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 151). Specifically, the doctor concluded that Plaintiff experienced no restrictions in the activities of daily living, no difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and once or twice experienced episodes of decompensation. (Tr. 151).

Dr. Florante also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 137–39). Plaintiff's abilities were characterized as "moderately limited" in one category. (Tr. 137–38). With respect to the remain-

---

**2.** A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM–IV at 34.

**3.** A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM–IV at 34.

ing 19 categories, however, the doctor reported that Plaintiff was either "not significantly limited" or that there existed "no evidence of limitation." (Tr. 137–38).

Treatment notes dated September 2, 2004, indicate that Plaintiff "has made significant changes in her life which have been of benefit to her." (Tr. 194). Treatment notes dated November 24, 2004, indicate that Plaintiff "continues to maintain a stable mood" and was "active in the group." (Tr. 229). Treatment notes dated January 10, 2005, indicate that Plaintiff had recently taken a trip to Kentucky with her husband. (Tr. 244).

On March 17, 2005, Plaintiff reported that she "continues to work 20 hours a week in an adult foster care home." (Tr. 199). Plaintiff reported that she was able to use the skills she learned in therapy "to get herself better emotionally regulated." (Tr. 199). Treatment notes dated May 9, 2005, indicate that the "major stressor" in Plaintiff's life was her relationship with her husband. (Tr. 278). On May 23, 2005, Plaintiff reported that she was preparing to take a vacation to Las Vegas. (Tr. 280).

Treatment notes dated July 18, 2005, indicate that Plaintiff's "most difficult days" were "related to stresses at home and having to work when she hadn't planned." (Tr. 294). On August 5, 2005, Plaintiff reported that her depression was "lifting." (Tr. 376). Treatment notes dated September 6, 2005, indicate that Plaintiff's GAF score was 60. (Tr. 369).

On October 6, 2005, Plaintiff reported that she was feeling significantly better following a recent medication modification. (Tr. 361). Plaintiff reported that her medication has been helpful with mood fluctuations and anger. (Tr. 361).

## II. PHYSICAL IMPAIRMENTS

X-rays of Plaintiff's lumbosacral spine, taken on July 8, 2002, revealed no evidence of abnormality. (Tr. 121). An August 25, 2003 examination of Plaintiff's spine revealed no evidence of abnormality. (Tr. 111). Plaintiff also exhibited "normal" range of motion. (Tr. 111).

X-rays of Plaintiff's right foot, taken on August 27, 2003, revealed "minimal early osteoarthritic" changes and a "small" calcaneal spur, but were otherwise "unremarkable." (Tr. 109).

On November 4, 2005, Plaintiff was examined by Dr. Matt Woods. (Tr. 327–28). Plaintiff reported that she was experiencing back pain. (Tr. 327). Plaintiff walked with a "normal gait" and exhibited "full range of motion" in her lumbosacral spine. (Tr. 328). Plaintiff exhibited "no atrophy and normal strength and tone." (Tr. 328). When the doctor palpated Plaintiff's spine, Plaintiff's response was "out of proportion with pressure applied." (Tr. 328). Dr. Woods diagnosed Plaintiff with lumbago. (Tr. 328).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the

4.
1. An individual who is working and engaging in *substantial gainful activity* will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));
2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

## B. *The ALJ's Decision*

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) mental/emotional problems and (2) back problems. (Tr. 17). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 19–21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen,* 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997) (ALJ determines RFC at step four, at which point claimant bears burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[5] which involved no contact with the public. (Tr. 18–19). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

■ The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

5. Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8–hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work—the Medical–Vocational Rules of Appendix 2, SSR 83–10, 1983 WL 31251 at *6 (S.S.A., 1983).

number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson,* 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific jobs*" is needed to meet the burden. *O'Banner v. Sec'y of Health, Education & Welfare,* 587 F.2d 321, 323 (6th Cir.1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson,* 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

The vocational expert testified that there existed approximately 73,200 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 430–31). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services,* 923 F.2d 1168, 1174 (6th Cir.1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen,* 837 F.2d 272, 274 (6th Cir.1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

### a. The ALJ Properly Evaluated Plaintiff's Obesity

Plaintiff asserts that the ALJ failed to take into consideration that she is obese and failed to consider the impact of her obesity on her ability to work pursuant to the procedure articulated in Social Security Ruling 02–01p.

The ALJ's opinion contains a thorough discussion of Plaintiff's medical background and treatment history. While Plaintiff's care providers recognized that Plaintiff was overweight, Plaintiff has failed to identify any evidence or opinion that her care providers considered that her obesity impaired her to an extent beyond that recognized by the ALJ. As for whether the ALJ complied with Social Security Ruling 02–01p, as the Sixth Circuit has observed:

> Social Security Ruling 02–01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart,* 165 Fed.Appx. 408, 411–12 (6th Cir.2006).

The ALJ considered all of Plaintiff's conditions and impairments when assessing Plaintiff's residual functional capacity. None of Plaintiff's care providers expressed the opinion that Plaintiff's obesity impaired or limited Plaintiff to an extent beyond that recognized by the ALJ. As the ALJ's RFC determination is supported by substantial evidence, the Court discerns no error.

### b. The ALJ Properly Evaluated Plaintiff's Credibility

The ALJ found Plaintiff less than credible because her subjective allegations of disability were contradicted by the medical evidence as well as Plaintiff's reported activities. (Tr. 19). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a

medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir.1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also, Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir.1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the Duncan standard. *See Workman v. Commissioner of Social Security*, 105 Fed.Appx. 794, 800–801 (6th Cir.2004).

▬▬ Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir.1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed.Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed.Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also, Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir.2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir.1987).

As the ALJ correctly concluded, Plaintiff's subjective allegations of disability are contradicted by the observations and conclusions of Plaintiff's treating physicians, the objective medical evidence, and Plaintiff's reported activities. The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

### *CONCLUSION*

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed.**

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct.

466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Date: April 22, 2009