**David A. WORKMAN, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 02–6283.

United States Court of Appeals, Sixth Circuit.

July 29, 2004.

---

Donna S. Thornton–Green, Kitchen & Thornton–Green, Paducah, KY, for Plaintiff–Appellant.

Elyse Sharfman, Dennis R. Williams, Mary Ann Sloan, Christopher G. Harris, Atlanta, GA, for Defendant–Appellee.

Before GIBBONS and COOK, Circuit Judges; and OLIVER, District Judge.*

GIBBONS, Circuit Judge.

Plaintiff-appellant David A. Workman appeals from the district court's decision affirming the denial of his application for disability insurance benefits by the Commissioner of Social Security. Workman filed his application on July 28, 1998, alleging an inability to work due to a heart condition, rib surgery, right arm problems, dizziness, shortness of breath, fatigue, back pain and depression. After Workman's claim was denied initially and on reconsideration, an Administrative Law Judge ("ALJ") conducted a hearing and subsequently concluded that Workman was ineligible to receive benefits because he was "capable of making an adjustment to work which exists in significant numbers in the national economy." In reaching this conclusion, the ALJ rejected the findings of Workman's most recent treating physician, Dr. Mark Irvin, and noted that Workman's own statements concerning his impairment were "not entirely credible" in light of his description of his activities and lifestyle, the lack of medical treatment required over a twelve-month period, and discrepancies between his assertions and information contained in the medical evidence. The district court affirmed, finding that the ALJ's credibility assessment and decision not to give Dr. Irvin's opinion controlling weight were supported by substantial evidence. For the following reasons, we affirm the judgment of the district court.

---

* The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

## I.

Workman was forty-eight years old at the time of the hearing decision on July 29, 1999. He has a GED and has had minimal training as a machinist. Prior to 1992, he held jobs as a truck driver, furniture deliveryman, general laborer, and plumber. From July 1992 until June 1998, Workman was employed as a kitchen aide and truck driver for Meals on Wheels. His job duties included filling trays with food, loading the trays on to trucks, cleaning the kitchen, taking out trash, mopping floors, and unloading delivery trucks. The ALJ concluded that June 30, 1998, was the last date on which Workman had engaged in substantial gainful activity.

Workman has a history of rheumatic heart disease, and he underwent aortic and mitral valve replacement surgery on January 17, 1995. His treating physician, Dr. Sami Baddoura, recorded atrial fibrillation on January 24, January 27, January 28, and January 30, 1995. Workman did not experience another episode of atrial fibrillation after March 6, 1995. He also denied experiencing orthopnea, worsening dyspnea on exertion, and chest discomfort. Although Workman testified that he was released to work with the restriction of light lifting after his heart surgery, Dr. Baddoura's treatment notes indicate that he released Workman "to resume his full duties at work." On April 2, 1997, Dr. Baddoura described Workman as "fairly active and attempting to lose weight."

On December 15, 1997, Dr. Charles Ross examined Workman for complaints of progressive pain and swelling in his right arm. Dr. Ross diagnosed him with right thoracic outlet syndrome and recommended surgical decompression. Workman immediately regained his ability to elevate his arm following surgery and reported minimal pain. At a post-operative follow-up three weeks later, Dr. Ross noted that Workman had good range of motion in his shoulder and reported mild swelling. He had experienced some degree of post-operative pain, but it was not severe. Dr. Ross advised Workman to increase his activity and arm exercises and released him to return to work on January 19, 1998.

On May 5, 1998, Workman told his then-treating physician Dr. Sabina Seitz that he had experienced depression for two months and that he had back pain that was worse when he was working. He also reported that he was losing his job at the end of June and that he was tired and mad a lot. Dr. Seitz proscribed Prozac and noted Workman had "lots of financial stress."

Workman reported increasing dyspnea on exertion on June 10, 1998. He also complained of shortness of breath during an office visit with Dr. Seitz on July 27, 1998. Dr. Kenneth Ford, Workman's treating cardiologist, noted that his shortness of breath may have been related to increasing weight gain.

On July 28, 1998, Workman filed an application for disability insurance benefits, alleging an inability to work beginning June 30, 1998, due to a heart condition, rib surgery, right arm problems, dizziness, shortness of breath, fatigue, back pain, and depression. His alleged disability onset date is the same date he was laid off from work at Meals on Wheels. On August 19, 1998, Workman underwent a psychological consultative evaluation. However, no psychological testing was ordered or performed and the conclusions were predominantly "rule-out's." The psychological examiner described him as not overly dramatic or manipulative, with "some situational anxiety and moderate depression, secondary to his present condition in life[,] including his unemployment."

Two state agency medical consultants reviewed Workman's record and offered their opinions on his exertional limitations.

Dr. Terry Laun opined that Workman could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently as well as sit or stand for a total of six hours in a normal eight-hour workday. Dr. Alexis Guerrero was of the opinion that he could lift or carry twenty pounds occasionally and ten pounds frequently. Dr. Guerrero also stated that Workman could frequently balance, stoop, kneel, crouch, climb, or crawl, and that he could occasionally climb ladders and scaffolds.

On November 2, 1998, Workman was hospitalized with pneumonia. His treating physician, Dr. Mark Irvin, also diagnosed him with type II diabetes and asthma. Dr. Irvin saw Workman on October 23, October 26, November 2, and November 5, 1998, before completing a residual functional capacity assessment form on November 12. Dr. Irvin stated that Workman could lift or carry no more than five pounds occasionally and only one pound frequently during an eight-hour work day. He also stated that Workman could stand for one to two hours and sit for two to four hours per eight-hour work day. He indicated that Workman could occasionally balance, stoop, crouch, or kneel and that he could never climb or crawl. These functional limitations were all attributed to Workman's valvular heart disease, diabetes, and asthma. In a February 1, 1999, letter, Dr. Irvin offered his opinion that Workman was disabled:

> Because of [Workman's] diabetes and asthma and valvular heart disease he is a high risk for pneumonia and other complications. In my medical opinion, Mr. Workman is severely limited in his ability to do any kind of sustained work. This patient may be able to withstand some non-strenuous activities, however, because of these medical conditions he is unable to sustain any sort of prolonged work or physical exertion. In my medical opinion this patient is disabled secondary to the above conditions.

On March 11, 1999, Workman experienced an episode of cardiac dysrhythmia and atrial fibrillation. His treating physician, Dr. Dale Kesl, noted that Workman was under tremendous stress because of financial problems and family difficulties. On March 12, 1999, Dr. Patrick Withrow declined to prescribe an anti-arrhythmic drug due to the infrequent nature of his atrial fibrillation, but indicated that at some point, an anti-arrhythmic drug would most likely be required.

Workman's claim for disability insurance benefits was denied initially and on reconsideration, and on March 17, 1999, a hearing was held before an ALJ in Paducah, Kentucky. The ALJ heard testimony from Workman and a vocational expert, Dr. Thomas Holcomb. Workman testified that his thoracic surgery did not correct the difficulties he had been having with his right arm and shoulder. He alleged problems with making a fist, holding a pencil, and shaving. He stated that he could lift up to five pounds, that he was unable to lift his arms above shoulder level, and that he could walk for only fifty feet before getting out of breath and experiencing chest pains. He admitted that his medication controlled his symptoms from diabetes and asthma.

The ALJ also inquired into Workman's application for unemployment benefits. Workman received unemployment benefits from July 1998 until November 1998. He conceded that, by receiving unemployment benefits, he was indicating to the state that he was able to work, but testified that he sought benefits anyway because he "had to have money coming in to pay [the] bills and buy medicine and stuff like that."

The vocational expert testified that an individual of Workman's age, education and work experience with the exertional

limitations described by Dr. Guerrero could work as a security guard, a counter attendant, and a shipping and receiving clerk. He estimated that approximately 11,200 of these types of jobs existed in the state of Kentucky. However, he also conceded that if Workman's testimony at the hearing regarding his limitations was accepted as "fully credible," he could not perform any of the jobs described.

The ALJ concluded that Workman was not disabled because he retained the residual functional capacity to perform work that existed in significant numbers in the national economy. In reaching this conclusion, the ALJ afforded "no weight" to Dr. Irvin's assessment of Workman's residual functional capacity and found that Workman's own testimony regarding his limitations was "not entirely credible." Based on the limitations described by the state agency examiners, the ALJ determined that Workman retained the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds. Despite finding that Workman was unable to return to his former employment or to perform the full range of light work, the ALJ nonetheless concluded that he was capable of making an adjustment to work which existed in significant numbers in the national economy, including the more than 11,000 positions identified by the vocational expert at the hearing.

The magistrate judge recommended reversal after determining that the ALJ should have given controlling weight to the opinion of Dr. Irvin, but the district court concluded that substantial evidence supported the ALJ's findings and affirmed the Commissioner's decision denying benefits. Workman appeals, arguing that the ALJ erred by disregarding the opinion of his treating physician and by rejecting his testimony as not entirely credible.

II.

Pursuant to 42 U.S.C. § 405(g), this court's review of the Commissioner's decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether substantial evidence exists, this court must examine the entire administrative record as a whole. *Id.* The court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). If supported by substantial evidence, the Commissioner's decision must be affirmed even if this court would decide the matter differently, and even if substantial evidence also supports the claimant's position. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc).

In disability insurance benefit cases, the plaintiff has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability. 42 U.S.C. § 423(a); *Wyatt v. Sec'y Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.1992). A disability is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). Determining whether an individual is disabled within the meaning of the Act requires a five-step sequential analysis:

1. If a claimant is doing substantial gainful activity, he is not disabled.

2. If a claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If a claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors such as age, education, and skills, he is not disabled.

20 C.F.R. § 404.1520; *Walters,* 127 F.3d at 529. Once it is established, as it has been in this case, that a claimant cannot perform his past relevant work, the burden shifts to the Commissioner to establish that the claimant retains sufficient residual functional capacity to permit him to engage in other substantial gainful employment. *Young v. Califano,* 633 F.2d 469, 470 (6th Cir.1980). To meet this burden, there must be "a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare,* 587 F.2d 321, 323 (6th Cir.1978)). Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and mental impairments. *Id.*

The ALJ determined that Workman retained the residual functional capacity to perform light work,[1] and that, based on the vocational expert's testimony, he was capable of making an adjustment to perform work which existed in significant numbers in the national economy. Workman contends that the ALJ erred in reaching the conclusion that he retained the residual functional capacity to perform light work. In particular, he argues that the ALJ improperly disregarded the opinion of his treating physician and erroneously rejected his own testimony as "not entirely credible." If his treating physician's assessment and his hearing testimony had been given their appropriate weight, Workman argues, the ALJ would have found that he was under a disability and entitled to benefits.

## A. Treating Physician Opinions

 A treating physician's opinion is entitled to controlling weight only if it is based upon objective medical findings and is not inconsistent with other substantial evidence in the record as a whole. *Cutlip,* 25 F.3d at 287; *Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir.1990). If a treating physician's opinion is not given controlling weight, it is evaluated under the factors that are used to assess any other physician's opinion, including the length and nature of the treating relationship and whether the opinion is

---

1. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

supported by and consistent with other evidence in the medical record. *See* 20 C.F.R. 416.927(d)(2)-(6). The ALJ may reject the opinion of a treating physician when good reason is found in the record for doing so. *See Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988).

In this case, substantial evidence supports the ALJ's decision not to accord Dr. Irvin's opinion controlling weight because his assessment was not consistent with other substantial evidence in the record. Dr. Irvin concluded that Workman could stand for one to two hours and sit for two to four hours per eight-hour work day. The ALJ rejected Dr. Irvin's assessment because it was inconsistent with other medical evidence of record, his restrictions were not found anywhere in his treatment records, and Dr. Irvin had seen Workman only once prior to completing the work assessment form.[2] Workman argues that the ALJ improperly rejected Dr. Irvin's opinion as inconsistent with the opinions of the two state agency examiners because "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir.1987.) However, as the Commissioner notes, Dr. Irvin's opinion is inconsistent with other medical evidence of record and there is no indication the ALJ relied on the assessment of the two state agency physicians as his basis for disregarding Dr. Irvin's opinion. The opinions of the state agency medical examiners were relied upon only after the ALJ had decided not to afford Dr. Irvin's opinion controlling weight. The limitations de-

scribed by Dr. Irvin were inconsistent with Dr. Baddoura's and Dr. Ross's decisions to release Workman to return to work following his heart and shoulder surgeries in 1995 and 1998. Dr. Baddoura described Workman as "fairly active" and Dr. Ross encouraged him to increase his activity. In contrast, Dr. Irvin concluded that Workman was "disabled" based on his valvular heart disease, asthma, and diabetes. A treating physician's conclusory statement that a claimant is disabled is not controlling because the ultimate determination of whether a claimant is disabled rests with the Commissioner. 20 C.F.R. § 404.1527(e)(1). Furthermore, at the hearing, Workman admitted that his medication controlled his symptoms from diabetes and asthma,[3] and Dr. Irvin never treated Workman for his heart condition. In deciding what weight to afford a treating physician's opinion, the Commissioner's regulations indicate that the nature and extent of the treatment relationship are both considered:

> Generally, the more knowledge a treating source has about your impairment[s] the more weight we will give to the source's opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but

---

2. The ALJ erred in stating that Dr. Irvin had seen Workman only once prior to performing his assessment. The record indicates that Dr. Irvin saw Workman on at least four occasions before completing the work assessment form. Nonetheless, the ALJ was clearly aware that Dr. Irvin treated Workman over a period of time because the opinion refers to Dr. Irvin's

"treating physician office notes for the period October 23, 1998 through January 7, 1998."

3. The ALJ is permitted to consider the effectiveness of medication used to control pain and other symptoms associated with a claimant's impairments. 20 C.F.R. § 404.1529(c)(3)(iv).

we will give it less weight than that of another physician who has treated you for the neck pain.

20 C.F.R. § 404.1527(d)(2)(ii). Given Workman's testimony that he was not significantly limited by either his diabetes or asthma, the ALJ did not err in declining to afford controlling weight to the opinion of a physician who did not treat Workman for his heart condition.

## B. Credibility Assessment

█ Workman next argues that the ALJ improperly determined that his testimony regarding his impairment was "not entirely credible." The ALJ reached this conclusion based on Workman's own description of his activities and lifestyle, the lack of medical treatment required over the previous twelve-month period, and discrepancies between Workman's assertions and the information contained in the medical evidence.

Subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms. *See Blankenship v. Bowen,* 874 F.2d 1116, 1123 (6th Cir. 1989). The standard for evaluating subjective complaints of disabling pain was articulated by this court in *Duncan v. Secretary of Health & Human Services,* 801 F.2d 847, 853 (6th Cir.1986):

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

An ALJ's credibility assessment must be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters,* 127 F.3d at 531. The regulations indicate that if disabling severity cannot be shown by objective medical evidence alone, the Commissioner may also consider other factors, such as daily activities and the type and dosage of medication taken. 20 C.F.R. § 404.1529(c)(3). In so doing, the Commissioner has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record. *Walters,* 127 F.3d at 531. The absence of sufficient objective medical evidence of pain makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis. *Id.* (citing *Blacha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 230 (6th Cir.1990)).

Substantial evidence exists in the record to support the ALJ's finding that Workman's testimony at the hearing was "not entirely credible." Workman testified at the hearing that the surgery on his right arm did not cure his shoulder condition. This testimony is directly refuted by Dr. Ross's treatment notes, in which he indicated that Workman immediately regained his ability to elevate his arm following surgery and reported minimal pain. Although Workman alleges a disability onset date of June 30, 1998, the record indicates that this is the date that Workman's employer laid him off due to economic reasons. Workman admitted at the hearing that he applied for and received unemployment benefits after he lost his job with Meals on Wheels despite the fact that he was also applying for disability insurance benefits for the same time period. Applications for unemployment and disability benefits are inherently inconsistent. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983); *see also Bowden v. Comm'r,* No. 97–1629, 1999 WL 98378, at *7 (6th Cir. Jan.29, 1999). There is "no

reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work." *Id.* Indeed, Workman essentially admitted that he applied for unemployment benefits in spite of his claim that he could not work because he "had to have money coming in to pay [the] bills and buy medicine and stuff like that." In light of this contradictory testimony, substantial evidence supported the ALJ's determination that Workman's description of his own limitations was "not entirely credible."

### III.

For the foregoing reasons, we affirm the judgment of the district court.