AMENDED MEMORANDUM OF DECISION[1]
*838 I. INTRODUCTION
Gerald Steven Kosirog ("Kosirog") brought the present action pursuant to section 405(g) of title 42 of the United States Code. Kosirog sought this Court's review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") to deny his applications for disability insurance and supplemental security income benefits from April 15, 2012 to August 26, 2013. Mot. J. Admin. R., ECF No. 13; Mem. Supp. Pl.'s Mot. J. Admin. R. ("Pl.'s Mem."), ECF No. 13-1. Kosirog asked that this Court reverse the Commissioner's decision or remand his case for further administrative proceedings. Pl.'s Mem. 1. The Commissioner, in contrast, requested that this Court affirm its decision. Def.'s Resp. Pl.'s Mot. J. Admin. R. ("Def.'s Resp.") 4, ECF No. 15.
This Court granted Kosirog's motion to remand because the hearing officer failed to identify the specific evidence in the record upon which he relied when making his decision.
A. Procedural History
On September 20, 2012, Kosirog applied for disability insurance benefits. Admin. R. 131-37, ECF No. 10. On March 13, 2013, Kosirog applied for supplemental security income benefits. Id. at 138-47. Both applications had a disability onset date of April 15, 2012. Id. at 131, 148. The Social Security Administration denied Kosirog's request for both benefits initially and after reconsideration. Id. at 71-73, 78-79. On September 3, 2014, a hearing officer held a hearing upon Kosirog's request. Id. at 29-49, 81-82.
The hearing officer found that Kosirog had a disability beginning August 27, 2013, when Kosirog turned 50 years old, but not earlier. Id. at 13-28. Disputing this finding, Kosirog requested review of the hearing officer's determination that he did not have a disability between April 15, 2012 and August 26, 2013. Id. at 9. On February 26, 2016, the Appeals Council denied review of the hearing officer's decision. Id. at 1.
On May 26, 2016, Kosirog filed the present action for review of the Commissioner's decision. Compl., ECF No. 1. On July 18, 2016, the Commissioner filed an answer, ECF No. 9, and the administrative record, ECF No. 10. On September 30, 2016, Kosirog filed a motion for judgment on the administrative record and a supporting memorandum. ECF No. 13. On October 28, 2016, the Commissioner responded. ECF No. 15. On November 11, 2016, Kosirog replied. Pl.'s Reply 1, ECF No. 16.
On January 29, 2018, the case was assigned to this Court. Electronic Clerk's Notes, ECF No. 17. On September 19, 2018, this Court heard oral argument and remanded the case for further proceedings. Electronic Clerk's Notes, ECF Nos. 21, 22. This opinion explains that decision.
B. Factual Background
Kosirog was born in 1963. Admin. R. 131. He completed his GED in 1991, id. at 34, and has worked as a concrete construction worker, a carpenter, and an overhead crane operator, id. at 33, 34, 44-45.
On March 2, 2012, after examination, Arthur Williams, D.O. ("Dr. Williams"), diagnosed Kosirog with chronic obstructive pulmonary disease ("COPD"). Id. at 246. On April 15, 2012, Kosirog fell off a horse and fractured four ribs. Id. at 253, 266, 301. Kosirog stated that he became disabled after that accident. Id. at 40, 131.
*839 On July 26, 2012, during an appointment with Dr. Williams, Kosirog reported feeling substantial pain resulting from his horseback riding accident. Id. at 266. During Kosirog's examination, Dr. Williams detected decreased breathing patterns in both lungs and tenderness of the right flank and lumbar spine. Id. at 267. Dr. Williams diagnosed Kosirog with lumbar disc disease, COPD, and anxiety. Id. He prescribed Hydrocodone-Acetaminophen, Symbicort, and Clonazepam to treat those ailments, respectively. Id.
On August 7, 2012, John Klekamp, M.D. ("Dr. Klekamp"), began treating Kosirog for lower back pain radiating to the right leg. Id. at 253. After reviewing Kosirog's x-rays, Dr. Klekamp diagnosed Kosirog with disc degeneration as well as cervical pain. Id. at 253-54.
On August 23, 2012, during an appointment with Dr. Williams, Kosirog reported continued back pain and stated that medication was helping "just a little bit." Id. at 264. An examination revealed that Kosirog had decreased reflexes in his right knee and decreased strength in both legs. Id. at 265. Dr. Williams rediagnosed Kosirog with lumbar disc disease, administered an injection of Depo-Medrol and Decadron, and prescribed Prednisone. Id. On September 25, 2012, Dr. Williams noted no significant changes in Kosirog's symptoms. Id. at 262.
On October 5, 2012, an MRI of Kosirog's lumbar spine showed some mild and moderate arthropathy, a disc herniation, and marked degenerative L5-S1 disc stenosis. Id. at 277. On October 12, 2012, Dr. Williams administered an epidural steroid injection to Kosirog. Id. at 279. Then, on October 26, 2012, Kosirog underwent a second epidural steroid injection. Id. at 280.
On December 5, 2012, Dr. Klekamp performed a lumbar discectomy surgery on Kosirog. Id. at 249-50. On February 14, 2013, Kosirog stated that he had pain in the middle region of his back, right shoulder, neck, and tailbone despite the lumbar discectomy surgery. Id. at 402. At Dr. Klekamp's recommendation, Kosirog visited a pain management specialist who diagnosed him with sacroliitis, lumbar disc degeneration, thoracic back pain, cervicalgia, and lumbar radiculopathy. Id. at 319, 402.
On March 14, 2013, Dr. Williams saw Kosirog for a follow-up visit regarding his lumbar discectomy surgery. Id. at 297. X-rays of his spine, taken the same day, showed straightening of the cervical spine with decreased range of motion, osteophytic spurs, and degenerative disc disease with spondylosis and disc narrowing. Id. at 289.
On May 6, 2013, Dr. Williams completed a Multiple Impairment Questionnaire for Kosirog. Id. at 299-306. He diagnosed Kosirog with lumbar disc disease after his surgery in December 2012. Id. at 299. To support his assessment, Dr. Williams cited clinical findings that included an MRI scan and the absence of ankle reflexes. Id. at 299-300. Dr. Williams reported that Kosirog's primary symptoms were pain in the right leg, a limping gait, and exhaustion. Id. at 301. Kosirog's pain ranged from moderate to severe, from six to ten on a ten-point scale, and his fatigue ranged from moderate to moderately severe, from six to eight on a ten-point scale. Id. Dr. Williams stated that the symptoms and limitations detailed in the questionnaire had been present since April 15, 2012. Id. at 305.
Dr. Williams found that Kosirog could sit for a maximum of one hour and stand and walk for a total of one hour during an eight-hour workday, but needed to change positions every 15 minutes. Id. at 299-306, 324, 408. Kosirog could occasionally lift and carry ten pounds, but never more. Id.
*840 at 302. He had significant limitations performing repetitive reaching, handling, fingering, and lifting. Id. Dr. Williams determined that Kosirog was markedly limited, or effectively precluded, from using his upper extremities for grasping, turning, and twisting objects, and moderately limited from performing fine manipulations. Id. at 302-03. Kosirog's pain, fatigue, and other symptoms were frequently severe enough to interfere with his attention and concentration. Id. at 304. Kosirog required unscheduled breaks, of a 35-minute duration, approximately once an hour in an eight-hour workday. Id. Kosirog had good and bad days, but would be absent from work, on average, more than three times a month. Id. at 305.
D. Testimony
Kosirog testified at the hearing that he lives with his wife. Id. at 34. Kosirog told the hearing officer that he lies down for most of the day and watches television, id. at 39, but sits outside for about 45 minutes in the morning. Id. His wife cooks lunch and dinner. Id. He does not do any household chores and needs help from his wife to get dressed. Id. at 40.
Kosirog testified about his accident in April 2012. Id. at 35-36. Kosirog testified that he has a sharp and shooting pain in his lower back, buttocks, and right leg. Id. at 36. Kosirog also testified that the pain interferes with his ability to stand and walk. Id. Kosirog stated that he can walk only 100 feet before he needs to stop and rest for 15 minutes; he can sit only for 45 minutes and stand for approximately 15 minutes; and after three to four hours he must lay flat. Id. at 37.
Kosirog testified that he was recently diagnosed with COPD, for which he uses a continuous positive airway pressure (CPAP) machine during the night to help him breathe. Id. at 38. Also, it is difficult for him to go outside in hot weather. Id.
A vocational expert testified that an individual of Kosirog's age, education, and work history, limited to light exertional work with no concentrated exposure to pulmonary irritants or vibrations, could not perform Kosirog's past work. Id. at 45-46. The vocational expert testified that such an individual could work as an assembler and a gate guard. Id. at 46-47. He further explained that if the individual was further limited to sedentary work, he could perform jobs as a document preparer, a surveillance system monitor, and a ticket-taker or ticket-seller. Id. at 47. The vocational expert stated that if an individual needed to lie down for at least one hour a day, he could not perform any work. Id. Finally, the vocational expert testified that an individual who missed work three times a month could not work. Id. at 48.
II. LEGAL STANDARD
A. Standard of Review
This Court reviews the Commissioner's denial of benefits to ensure that the decision is supported by substantial evidence and uses the proper legal standards. 42 U.S.C. § 405(g) ; Wright-Hines v. Commissioner of Soc. Sec., 597 F.3d 392, 395 (6th Cir. 2010) ; Blakley v. Commissioner of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Jordan v. Commissioner of Soc. Sec., 548 F.3d 417, 422 (6th Cir. 2008) (quoting *841 Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ). The substantial evidence standard "presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984) ).
This Court may enter judgment affirming, modifying, or reversing the Commissioner's decision to deny benefits, with or without remand for rehearing, 42 U.S.C. § 405(g) ; the Court, however, accords great deference to the Commissioner's decision and will not disrupt it unless there is an error of law or the record does not contain substantial evidence supporting the denial, Blakley, 581 F.3d at 405-06. There is a lack of substantial evidence where the hearing officer does not "follow agency rules and regulations ... even where the conclusion of the [hearing officer] may be justified based upon the record." Cole v. Astrue, 661 F.3d 931, 940 (6th Cir. 2011) (citing Blakley, 581 F.3d at 407 ).
B. Supplemental Security Disability Standard
An individual qualifies as disabled if the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To determine whether a person is disabled, the Commissioner examines five sequential questions: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or severe combination of impairments; (3) whether the claimant has an impairment or combination of impairments that meets or equals the severity of the impairments specified in the regulations and meets the duration requirement; (4) based on an assessment of residual functional capacity ("RFC"), which is the ability to do physical and mental work activities on a sustained basis despite limitations from the impairments, whether the claimant is able to perform past relevant work; and (5) based on the claimant's RFC, age, education, and work experience, whether the claimant is capable of performing other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during the first four steps, but if the claimant succeeds in showing that he cannot perform his past relevant work, then the Commissioner bears the burden of proof at the fifth step. See Jordan, 548 F.3d at 422-23.
III. THE HEARING OFFICER'S DECISION
The hearing officer found that since April 15, 2012, Kosirog had severe impairments that included a spinal disorder, COPD, and obesity. Admin. R. 20. In addition, the hearing officer found that prescription medication controlled Kosirog's hypertension. Id. The hearing officer then determined that Kosirog did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. Id. The hearing officer concluded that Kosirog had a residual functional capacity to perform sedentary work with certain limitations. Id. Therefore, the hearing officer found that Kosirog was not disabled prior to August 27, 2013. Id. at 24. The hearing officer determined that Kosirog's impairments would not preclude him from performing sedentary jobs that exist in significant numbers in the national economy, including work as a document preparer and surveillance system monitor. Id. at 23. Nevertheless, because Kosirog soon would *842 be of advanced age, the hearing officer found that he became disabled on August 27, 2013, following Rule 201.14 of the medical-vocational guidelines. Id. at 24.
The hearing officer found that Kosirog's medically determinable impairments could reasonably be expected to cause many of his alleged symptoms. Id. at 21. He concluded, however, that he retained the ability to perform sedentary work. Id.
The hearing officer gave Dr. Williams' opinion little weight. Id. at 22. The hearing officer gave weight to Dr. Williams' opinion only to the extent that it found that Kosirog could lift and carry ten pounds and should avoid concentrated exposure to pulmonary irritants. Id. at 20, 302. As for Dr. Williams' finding that Kosirog was unable to work, the hearing officer determined that "[t]he medical records, treatment notes and reported activities do not fully support his opinion." Id. at 21-22. The hearing officer also gave little weight to the opinions of Karla Montague-Brown, M.D. ("Dr. Montague-Brown") and Thomas Thrush, M.D. ("Dr. Thrush"), and did not give controlling or great weight to any medical opinion. Id.
IV. ANALYSIS
Kosirog raises two challenges to the hearing officer's decision: (i) the hearing officer failed properly to weigh the opinion of Dr. Williams; and (ii) the hearing officer failed properly to evaluate Kosirog's credibility. Pl.'s Mem. 9.
A. Weight Given to Medical Evidence
Kosirog argues that the hearing officer failed properly to weigh the medical opinion evidence. Pl.'s Mem. 11. More specifically, Kosirog asserts that the hearing officer erred by failing to give greater weight to the opinion of his primary care physician, Dr. Williams. Id. The Commissioner argues that substantial evidence supports the little weight the hearing officer gave to Dr. Williams' opinion. Def.'s Resp. 4, 14. Thus, the Commissioner asks this Court to uphold the hearing officer's decision. Id.
The hearing officer is required to "evaluate every medical opinion." 20 C.F.R. § 404.1527(c). A source that has examined the patient before the hearing is given more weight than one who has not examined the patient. Id. §§ 404.1502, 404.1527(c)(1). In addition, the opinion of a treating physician is generally given more weight than that of a physician who has only examined the patient. Id. §§ 404.1502, 404.1527(c)(2). The Sixth Circuit explained in Gayheart that the regulations require the hearing officer to provide " 'good reasons' for discounting the weight given to a treating-source opinion." Gayheart v. Commissioner of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c) ). Those reasons must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996) ). Finally, the Sixth Circuit held in Gayheart that the hearing officer failed to provide "good reasons" for the limited weight it accorded to the treating physician's opinions, when there lacked substantial evidence demonstrating inconsistencies. Id. at 376-78.
In this case, the hearing officer gave little weight to Dr. Williams' opinion, noting that he gave "little reasoning or explanation" for his findings. Admin. R. 22. In addition, he found that "the medical records, treatment notes, and [Kosirog's] reported activities [did] not fully support Dr. Williams' opinion." Id. The Commissioner raises several arguments to support the hearing officer's decision. Def.'s Resp. 7-11. First, the MRI findings and absent *843 ankle reflexes on which Dr. Williams supported his assessment were prior to Kosirog's discectomy surgery in December 2012. Id. at 8. Second, other doctors' opinions contradicted those of Dr. Williams: Dr. Klekamp's report from February 2013 said that Kosirog appeared "neurologically stable" and Dr. Montague-Brown and Dr. Thrush said Kosirog could work at a medium level. Id. at 9-10. Finally, the Commissioner cites to a Function Report that Kosirog completed in October 2012 in which he summarized his daily activities, showing contradictions with Dr. Williams' findings. Id. at 10-11. The hearing officer, however, only briefly mentioned Drs. Montague-Brown and Thrush's opinions and gave them little weight in his opinion. Admin. R. 19-24.
As explained previously, the regulations require the hearing officer to provide "good reasons" for discounting a treating source's opinion and to support those reasons with specific evidence from the record. Gayheart, 710 F.3d at 376. In this case, apart from stating that the "record does not support the severity of [Dr. Williams'] opinion," the hearing officer's decision to discount Dr. Williams' opinion was ambiguous and did not point to any specific evidence to support it. Admin. R. 22. Where a hearing officer does not support his assertions, it is not the role of this Court to find evidence in the record or to make its own credibility analysis. Karger v. Commissioner of Soc. Sec., 414 F. App'x 739, 754 (6th Cir. 2011) (determining that district courts do not have to "scour the record for evidence and expert reasoning which the [hearing officer] might have relied on and which could support a finding of no-disability if the [hearing officer] actually considered it."). As in Gayheart, the hearing officer failed to provide "good reasons" for discounting the treating physicians' opinion. 710 F.3d at 375-76.
The only other medical opinions that the hearing officer considered were those of Drs. Montague-Brown and Thrush, two state agency medical consultants, to which he also accorded little weight. Admin. R. 21. The Commissioner argues that these two doctors found Kosirog could perform at a medium level. Id. at 54-56, 65-67. While the hearing officer did cite to these doctors' reports that Kosirog could perform at a medium exertional level, id. at 21, he did not explain that this contradiction supported his choice to disregard the testimony of Kosirog's treating physician.
The hearing officer also did not refer to Klekamp's inability to assess Kosirog's limitations as a basis for discounting Dr. Williams' opinions. Dr. Klekamp, Kosirog's treating surgeon, reported that based on his limited interaction with Kosirog, he could not provide an accurate account of his physical limitations, "now or in the future[,] within a reasonable degree of medical certainty." Def.'s Resp. 10 (citing Admin. R. 316). Here again, the hearing officer did not mention Dr. Klekamp's report when analyzing Dr. Williams' opinion.
Moreover, the hearing officer noted that Kosirog's reported activities did not fully support Dr. Williams' opinion. Admin. R. 22. The hearing officer, however, only stated this generally, without pointing to evidence about the activities that contradicted Dr. Williams' opinion. Id. Kosirog asserted at the hearing that his activities included only watching television, sitting, lying down, and getting help from his wife when dressing. Id. at 39-40; Pl.'s Mem. 12-13. In addition, Kosirog testified that his functioning improved somewhat following his surgery. Id. at 35.
The hearing officer did not point to any contradictory evidence in Dr. Williams' opinion. The Commissioner points now, however, to a Function Report completed *844 in October 2012, in which Kosirog indicated that "he walked, drove a car, went out alone, grocery shopped, paid bills, and visited [his] family and friends for about an hour at a time." Def.'s Resp. 10-11 (citing Admin. R. at 208-09). The Sixth Circuit has recognized that an individual's ability to perform daily activities is not always indicative of their ability to perform a full-time job. See Rogers v. Commissioner of Soc. Sec., 486 F.3d 234, 248-49 (6th Cir. 2007). Moreover, the hearing officer did not mention the function report or specific parts of Kosirog's testimony contradicting Dr. Williams' testimony. This Court cannot decide this case on the Commissioner's post hoc arguments. See Johnson v. Sec'y of Health & Human Servs., 794 F.2d 1106, 1113 (6th Cir. 1986).
The hearing officer must point to specific evidence that would contradict Dr. Williams' testimony. Gayheart, 710 F.3d at 376. The Sixth Circuit "do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion." Id. at 380 (quoting Cole, 661 F.3d at 939 ). This Court rules that the hearing officer's explanation for discounting Dr. Williams' opinion was ambiguous and insufficient.
Therefore, this Court GRANTED Kosirog's request to remand the decision.
B. Kosirog's Credibility
The hearing officer credited Kosirog's allegations that he was severely limited, but not to the extent that he was unable to perform sedentary work. Admin. R. 21. Kosirog argues that the hearing officer failed properly to evaluate Kosirog's credibility. Pl.'s Mem. 15. The Commissioner argues that the hearing officer's evaluation of Kosirog's symptoms was based on substantial evidence. Def.'s Mem. 4-5.
A hearing officer's subjective symptom evaluation is entitled to "great weight and deference," and this Court's review is limited to determining whether the hearing officer's reasons to discredit the subjective symptoms are supported by substantial evidence in the record. Jones v. Commissioner of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). Whenever the hearing officer "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). In Duncan v. Secretary of Health & Human Servs., the Sixth Circuit distilled these guidelines into a two-pronged test:
First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
Here, the hearing officer incorrectly followed the two-step process to analyze Kosirog's symptoms. See Admin. R. 21. In the first step, the hearing officer found objective medical evidence supporting medical conditions. Id. In the second step, after enumerating the subjective symptoms, the hearing officer found that Kosirog's subjective symptoms were credible, but not to the extent that he could not perform sedentary work. Id. at 21. The hearing officer may reasonably discount a claimant's testimony concerning the severity of his condition because his testimony was inconsistent with medical evidence in the record. See Temples v. Commissioner of Soc. Sec., 515 F. App'x 460, 462 (6th Cir. 2013) (per curiam). In this case, the hearing officer concluded that Kosirog's "medically determinable impairments could reasonably be *845 expected to cause many of the alleged symptoms; however, he retains the ability to perform sedentary work." Admin R. 21. The hearing officer then summarized the evidence in the record. Id. at 21-22. The hearing officer, however, did not explain how any of the evidence contradicted Kosirog's symptoms.
Finally, the hearing officer noted that Kosirog received unemployment compensation in the first, second, and third quarters of 2012. Id. at 19, 168-69. Even though the Social Security Administration has adopted the policy that receipt of unemployment benefits does not preclude disability benefits, Social Security Memorandum 10-1258 (Aug. 9, 2010), the Sixth Circuit still observes that "[a]pplications for unemployment and disability benefits are inherently inconsistent." Workman v. Commissioner of Soc. Sec., 105 F. App'x 794, 801 (6th Cir. 2004) (citing Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983) ; Bowden v. Commissioner of Soc. Sec., No. 97-1629, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999) ). In his opinion, however, the hearing officer only considered this point when deciding that Kosirog had not engaged in substantial gainful activity. Admin. R. 19. Thus, though the Commissioner makes this argument now, the hearing officer never referred to it as a reason to undermine Kosirog's credibility. Id.; Def.'s Resp. 6. As the Sixth Circuit has stated, the hearing officer is required to "explain his credibility determinations in his decision." Rogers, 486 F.3d at 248. The hearing officer "is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.' " Id. at 247 (citing Social Security Ruling 96-7p, 1996 SSR WL 374186, at *4). Therefore, this Court need not analyze the significance of this argument here.
The hearing officer should have identified specific medical evidence and non-medical facts to demonstrate inconsistencies in Kosirog's testimony. The hearing officer failed to comply with these requirements as well as Sixth Circuit precedent governing credibility determinations, and thus, failed appropriately to analyze Kosirog's residual functional capacity.
Therefore, the Court also GRANTED Kosirog's motion to remand the case on this basis.
For the foregoing reasons, on September 19, 2018, this Court GRANTED Kosirog's motion to remand the hearing officer's decision for further proceedings.
Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant in this lawsuit pursuant to Federal Rule of Civil Procedure 25(d). Berryhill became Acting Commissioner of Social Security on January 23, 2017. The original version of this opinion erroneously named Colvin as Defendant and Acting Commissioner.